# Exhibit "4" to Appendix of Foreign Authorities

## Outerbridge Access Association, et al. v. Marie Callender's Pie Shops, Inc., et al.

## Southern District Case No. 07-CV-2129 BTM (AJB)



Not Reported in F.Supp.                                                                                                                        Page 1
Not Reported in F.Supp., 1997 WL 714866 (N.D.Cal.), 10 NDLR P 302
**(Cite as: Not Reported in F.Supp.)**

▷
Delil v. El Torito Restaurants, Inc.
N.D.Cal.,1997.

United States District Court, N.D. California.
Hollynn DELIL, Plaintiff,
v.
EL TORITO RESTAURANTS, INC., et al.,
Defendants.
No. C 94-3900-CAL.

June 24, 1997.

ORDER
LEGGE, J.
*1 This action arises out of a visit by plaintiff Hollynn DeLil to the El Torito restaurant in Monterey owned by defendant El Torito Restaurants, Inc. ("El Torito"). DeLil is a disabled wheelchair user and she contends that El Torito violated the Americans with Disabilities Act ("ADA") and various California laws. El Torito now moves for partial summary judgment on DeLil's Ninth Cause of Action for injunctive relief under the ADA, on the grounds that DeLil has no standing to request injunctive relief because there is no "real and imminent" threat of future injury to DeLil.

I.

DeLil bases her claim on a single incident that occurred in 1993. DeLil went to the El Torito restaurant in Monterey for dinner. The restaurant is split into at least two levels. Wheelchair users can reach the lower dining level only by using El Torito's wheelchair lift. When DeLil tried to use the lift to descend to the lower level, it was locked and she alleges that no one was available to help her operate it.

DeLil claims that she eventually found a hostess, but the hostess did not have the key to the lift. The hostess looked for the manager, who was the only person with the key. When the manager arrived, DeLil alleges that he refused to give DeLil the key, stating that only the manager was allowed to operate the lift. The manager operated the lift controls himself from the landing platform.

After her meal, when DeLil wanted to leave the dining area, she alleges that she had to summon a waiter, and then wait once more while the waiter found the manager to unlock the lift. Again, according to DeLil, the manager ignored her request to use the lift independently.

El Torito, however, disputes DeLil's claim that she was not allowed to operate the lift by herself. The El Torito manager alleges that DeLil did *not* ask for a key or attempt to operate the lift independently. If she had, defendant claims that the manager would have allowed her to do so because that is El Torito's policy. In a prior motion for summary judgment, this court held that a factual dispute remains regarding whether DeLil asked for a key to the lift at the time of the disputed incident, and whether it is the policy of El Torito to allow disabled customers to operate the lift themselves.

II.

The court heard oral argument on the present injunctive relief motion on May 2, 1997. As of that date, DeLil had not entered the Monterey El Torito Restaurant since 1993. DeLil lives and works in Sacramento, more than a hundred miles from Monterey. At the May 2 hearing, this court granted DeLil request to file a supplemental *brief* on the issue of her standing to sue for injunctive relief under the ADA.

On May 11, 1997, DeLil returned to the Monterey El Torito. She now alleges new violations of the ADA based on that visit, including: (1) wheelchair users cannot safely enter the wheelchair lift without

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 4**

Not Reported in F.Supp.   Page 2
Not Reported in F.Supp., 1997 WL 714866 (N.D.Cal.), 10 NDLR P 302
**(Cite as: Not Reported in F.Supp.)**

the assistance of El Torito staff, (2) the ramp on the lower level of the lift is too steep for safe, unassisted access, (3) an El Torito staff person had to ride the lift with her because DeLil's body weight was insufficient to activate the lift, and (4) El Torito had stored several chairs in front of the lift, blocking her unassisted access to the lift. DeLil's visit to the Monterey El Torito on May 11 is patently a belated effort to bolster her standing to assert injunctive relief. This court granted DeLil the opportunity to file a supplemental *brief* so that she could fully address the *legal* issue before the court, not so that she could create a new fact record based on later-occurring charges. DeLil of course has the right to file a separate action based on El Torito's alleged violations of the ADA on May 11, 1997. But this court will decide the motion before it based on the factual record as it existed as of May 2, 1997.

### III.

*2 Summary judgment should be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of "informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.*" On the contrary, Rule 56(c), which refers to 'the affidavits, *if any* ' (emphasis added), suggests the absence of such a requirement." *Id.*

In cases where the nonmoving party, here plaintiff, will bear the burden of proof at trial on a dispositive issue, Rule 56(e) requires the nonmoving party to " go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

### IV.

El Torito asserts that DeLil has no standing to sue for injunctive relief under the ADA.

#### A.

DeLil has the burden of establishing that she has standing to raise the claims asserted. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Article III of the United States Constitution limits the judicial power of federal courts to "Cases" or "Controversies." U.S. Const., art. III, § 2. The doctrine of standing seeks to ensure that a plaintiff has a sufficient stake in the controversy to merit her being the one to litigate it. The Supreme Court has developed a three-part test for standing, a constitutional prerequisite growing out of Article III's "case or controversy" requirement. *See* U.S. Const. art. III, § 2, cl. 1. The first prong of the test is the " injury in fact" requirement: "[T]he plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent', not ' conjectural' or 'hypothetical.' " *Lujan,* 504 U.S. at 560. The second and third elements of the test are causation and redressability. *Id.* As it is clear that El Torito caused whatever violation of the relevant statutes may have occurred, and that a favorable decision of this court would redress any injuries caused by violation of the statutes, only the first prong of the *Lujan* analysis is at issue here.

An alleged violation of the ADA is an injury sufficient to give rise to an Article III case or controversy. *Aikins v. St. Helena Hosp.,* 843 F.Supp. 1329, 1334 (N.D.Cal.1994). In an earlier order, this court held that a single act of past discrimination was sufficient to endow DeLil with standing to bring an action under the ADA. This court did not, however, address whether DeLil has standing to make a claim for *injunctive reliSef.*

#### B.

*3 El Torito argues that because DeLil lacks

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3

Not Reported in F.Supp., 1997 WL 714866 (N.D.Cal.), 10 NDLR P 302
**(Cite as: Not Reported in F.Supp.)**

standing to bring an action for injunctive relief because she lives and works in Sacramento, over a hundred miles from the defendant's restaurant, and has not entered it since the 1993 incident that gave rise to this lawsuit; therefore, she has not demonstrated a real and immediate threat of future harm.

DeLil does not bring this suit as a class action. As the Supreme Court held in *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), DeLil cannot obtain standing to sue for injunctive relief merely by alleging that El Torito has a policy and practice of discriminating against disabled persons generally; she must demonstrate that she *herself* faces a real and immediate threat of future harm. In *Lyons,* the plaintiff alleged a single incident during which a police officer placed him in a choke hold without provocation, but the Court required a more extensive showing in order to have standing for injunctive relief:

That Lyons may have been illegally choked by the police on October 6, 1976, ... does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id.* at 105; *see also O'Shea v. Littleton,* 414 U.S. 488, 495-496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.").

In *Aikins v. St. Helena Hosp.,* 843 F.Supp. 1329 (N.D.Cal.1994), the plaintiff, a deaf woman, sued the defendant hospital because it did not provide a sign-language interpreter when she brought her husband in for emergency treatment. The plaintiff owned a mobile home seven miles away from the hospital and she stayed at that home for several days each year. *Id.* at 1333. On a motion for summary judgment, the court held that "[plaintiff] has shown neither that she is likely to use the hospital in the near future, nor that defendants are likely to discriminate against her when she does use the hospital. The Court cannot infer from [plaintiff's] limited experience with [[[defendants] that defendants routinely fail to comply with applicable anti-discrimination statutes." *Id.* at 1333-1334.

DeLil argues that in a subsequent order in the same case, *Aikins v. St. Helena Hospital,* 1994 WL 794759 (N.D.Cal. Apr.4, 1994), the court reversed its own opinion and held that the plaintiffs had standing to seek injunctive relief.[FN1] DeLil is incorrect. The April 4 order stated that:

FN1. The court issued the opinion published as *Aikins v. St. Helena Hotpital,* 843 F.Supp. 1329, on February 2, 1994.

The complaint contains the following allegations relevant to [plaintiff's] standing to seek injunctive relief: that plaintiff visits her mobile home near the hospital several times a year and considers it reasonably possible that she might need to seek services from the hospital, and that defendants are engaged in a "pattern and practice of violating" pertinent anti-discrimination statutes designed to ensure access to services by deaf people and other individuals with disabilities. *While the facts contained in these allegations are undoubtedly insufficient to withstand a motion for summary judgment, they are sufficient for mere pleading purposes* .It does not appear with certainty that [plaintiff] will be unable to prove any set of facts to establish her standing to seek injunctive relief....
*4 *Id.* at *3 (internal citations omitted) (emphasis added). The court issued its April 4 decision on a motion to dismiss, not a motion for summary judgment. When DeLil quoted the above passage to this court, she replaced the italicized language with an ellipsis. When this court considers the passage in its entirety, it is clear that the *Aikins* court applied a different substantive standard of proof on this motion to dismiss than it had in its earlier order on a motion for summary judgment. The April 4 order did not reverse, or even limit, that court's earlier decision in that case.

El Torito gains further support from *Hoepfl v. Barlow,* 906 F.Supp. 317 (E.D.Va.1995). In that case, the defendant doctor had refused to perform

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 4
Not Reported in F.Supp., 1997 WL 714866 (N.D.Cal.), 10 NDLR P 302
**(Cite as: Not Reported in F.Supp.)**

surgery on the plaintiff because the plaintiff was HIV positive. The plaintiff subsequently found another doctor who performed the surgery and then sought an injunction under the ADA ordering the defendant not to discriminate against other disabled persons in the future. The court found that because the plaintiff had moved to a different state, "it is highly unlikely that she will ever again be in a position where any discrimination by Dr. Barlow against disabled individuals will affect her personally." *Id.* at 320. The court held that "a plaintiff who cannot demonstrate a likelihood that she will ever again suffer discrimination at the hands of a defendant, even one who has discriminated against her in the past, does not have standing to obtain an injunction under the ADA."*Id.* at 323; *see also Atakpa v. Perimeter Ob-Gyn Associates, P.C.,* 912 F.Supp. 1566, 1574 (N.D.Ga.1994) (holding that the plaintiff did not have standing to sue the defendant ob-gyn clinic for injunctive relief, even though she was still in childbearing years, because she "has not alleged that she will ever seek services from defendants in the future").

DeLil has alleged only a single incident of discrimination in a restaurant more than a hundred miles away from where she lives and works. As of May 2, 1997, she had not attempted to visit the Monterey El Torito since 1993, nor had she even alleged that she intended to return to the restaurant. She has not demonstrated that she herself faces a real and immediate threat of future harm.

### C.

42 U.S.C. section 12188(a)(1) provides that: " Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions." DeLil argues that she has received "actual notice" that El Torito does not intend to comply with the ADA and that she is not required to return to the Monterey El Torito in order to bring this action.

Although a plaintiff need not repeatedly suffer discrimination in order to assert her rights under Title III, as discussed above, ADA plaintiffs who seek injunctive relief must still demonstrate that they themselves face a real and immediate threat of future harm. A Monterey resident who frequently visited the restaurant might bring a claim for injunctive relief under the ADA. DeLil, however, has not demonstrated continuing, present adverse effects that would warrant injunctive relief.

### D.

*5 Insofar as DeLil brought her suit to vindicate the rights of disabled persons generally, the Attorney General is the proper entity to bring such an action. A private action for injunctive relief under the ADA is available "to any person who *is being subjected* to discrimination on the basis of disability ... or who has reasonable grounds for believing that such person *is about to be subjected* to discrimination...."42 U.S.C. § 12188(a)(1) (emphasis added). Under 42 U.S.C. section 12188(b), the Attorney General may bring a civil suit in federal district court "[i]f the Attorney General has reasonable cause to believe that ... any person or group of persons *has been discriminated against* under this subchapter *and such discrimination raises an issue of general public importance.*" 42 U.S.C. § 12188(b)(1)(B) (emphasis added).
The combination of § 12188(a)(1) and 12188(b)(1)(B) is highly instructive: the former, which authorizes individual plaintiffs to seek injunctions, is cast in terms of ongoing discriminatory treatment; the latter, which authorizes the Attorney General to seek relief, is cast in terms of discriminatory treatment that occurred in the past.

*Hoepfl,* 906 F.Supp. at 324.

This court concludes that the ADA does not authorize private suits for injunctive relief to remedy a single incident of past discrimination absent continuing adverse effects. Further, injunctive relief is the *only* relief to which a private plaintiff is entitled in a suit under Title III of the ADA.Section 12188(a) limits the remedies to those

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1997 WL 714866 (N.D.Cal.), 10 NDLR P 302
**(Cite as: Not Reported in F.Supp.)**

recoverable under 42 U.S.C. section 2000a-3(a). Section 2000a-3(a) authorizes "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order." [FN2] Provisions for attorneys fees appear only in 42 U.S.C. section 2000a-3(b). Thus, since DeLil lacks standing to claim injunctive relief under the ADA, she has no possible relief under the ADA.

> FN2. The section also provides that, "upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security."

The court in *Hoepfl* explained the resulting plight of plaintiffs like DeLil who allege only past discrimination that is unlikely to be repeated:
Persons alleging past discrimination, as [plaintiff] does, can thus seek redress by persuading the Attorney General to sue under § 12188(b) and to seek relief in the form of both an injunction to prevent others from suffering discrimination and damages to compensate her as a person aggrieved by past discrimination. [Plaintiff] may reasonably regard this avenue of relief as impractical or unrealistic for obvious reasons; it is, nonetheless, an appropriate avenue and the one Congress chose to enact.

*Hoepfl,* 906 F.Supp. at 324.

### E.

DeLil has submitted numerous declarations in an attempt to show that the discrimination she allegedly experienced at the Monterey El Torito was pervasive and continuing, but she has not demonstrated that she herself is likely to suffer discrimination there in the future. This court therefore GRANTS El Torito's motion for partial summary judgment on DeLil's claims for injunctive relief.

### V.

**\*6** For the foregoing reasons, DeLil's Ninth Cause of Action for injunctive relief is DISMISSED. Under this court's order of June 3, 1997, the remaining claims, which the court believes are all state causes of action, are stayed pending the state court appellate decision in *Hankins v. El Torito.*

IT IS SO ORDERED.

N.D.Cal.,1997.
Delil v. El Torito Restaurants, Inc.
Not Reported in F.Supp., 1997 WL 714866 (N.D.Cal.), 10 NDLR P 302

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.