# Exhibit "7" to Appendix of Foreign Authorities

# Outerbridge Access Association, et al. v. Marie Callender's Pie Shops, Inc., et al.

# Southern District Case No. 07-CV-2129 BTM (AJB)



Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2004 WL 180044 (E.D.Pa.), 27 NDLR P 182
**(Cite as: Not Reported in F.Supp.2d)**

C
Hill v. Park
E.D.Pa.,2004.

United States District Court,E.D. Pennsylvania.
Christopher HILL and American Disability Institute
Plaintiffs,
v.
Keum S. PARK, Defendant.
No. Civ.A. 03-4677.

Jan. 27, 2004.

Jason L. Brodsky, Brodsky & Smith, LLC, Bala CYNWYD, PA, for Plaintiff.
John J. McCreesh, IV, McCreesh, McCreesh & Cannon, Upper Darby, PA, for Defendant.

*MEMORANDUM*
BAYLSON, J.
*1 Keum S. Park, doing business as Manoa Diner and Deli, ("Defendant") owns and operates a diner and deli at 1305 West Chester Pike, Havertown, Pennsylvania. Plaintiff Christopher Hill ("Hill") is confined to a wheelchair as a result of a disability. Plaintiff American Disability Institute ("ADI") is a nonprofit advocacy group that seeks to make public accommodations available to all individuals by ensuring that public property is in compliance with the Americans with Disabilities Act ("ADA"). On August 13, 2003, Plaintiffs filed a complaint against Defendant alleging that Defendant's failure to renovate his facilities to accommodate his disabled patrons violates the ADA.

On October 8, 2003, pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant filed the instant motion to dismiss for lack of subject matter jurisdiction. Defendant argues that Title III of the ADA requires a litigant to exhaust his administrative remedies as a prerequisite to filing a civil suit, and, Plaintiffs having failed to do so, their ADA claim therefore should be dismissed for lack of subject matter jurisdiction. Defendant also argues that Title III does not grant Plaintiffs the right to a jury trial.[FN1] Lastly, Defendant has moved to dismiss ADI as a party, as ADI allegedly lacks standing to bring this action.

> FN1. The Court need not decide this issue as Plaintiffs withdrew their request for a jury trial in their Reply Brief. (Pls.' Reply Br. at 13.)

For the reasons detailed herein, Defendant's Motion to Dismiss will be granted in part and denied in part.

I. Standard and Jurisdiction

A court will grant a motion to dismiss a complaint under Rule 12(b) if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."*Sprague v. Am. Bar Assoc.*, No. 01-382, 2001 U.S. Dist. LEXIS 18707, at *6 (E.D.Pa. Nov. 14, 2001) (quotation omitted). This Court may grant Defendant's Motion to Dismiss for lack of subject matter jurisdiction based on Plaintiffs' failure first to exhaust administrative remedies only if it is undisputed that there has been no attempt to exhaust administrative remedies. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir.1997). It is undisputed that Plaintiffs undertook no effort to exhaust administrative remedies prior to initiating suit.

This action arises from a violation of Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.*, Therefore, this Court may exercise jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is appropriate under 28 U.S.C. § 1391(b).

II. Discussion

Title III of the ADA prohibits places of public

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 7**

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 180044 (E.D.Pa.), 27 NDLR P 182
**(Cite as: Not Reported in F.Supp.2d)**

accommodation from discriminating, on the basis of a disability, against an individual in the full and equal access to goods and services. The law's general prohibition provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*2 42 U.S.C. § 12182(a). A violation under Title III can be based on the "failure to make reasonable modifications in policies, practices, or procedures, when such procedures are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...." 42 U.S.C. § 12182(b)(2)(A)(ii).

### A. Exhaustion Prerequisite

Defendant's Motion to Dismiss rests on his contention that Title III of the ADA required Hill and ADI to have exhausted their administrative remedies before initiating this suit.

Instead of drafting a separate enforcement provision for Title III, Congress instead borrowed from Title II of the Civil Rights Act of 1964. 42 U.S.C. § 12188(a)(1) provides that the "remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. § 2000a-3(a)) are the remedies and procedures this title provides to any person who is being subjected to discrimination on the basis of disability in violation of this title...." Section 2000a-3(a) of Title 42 allows an aggrieved person to seek injunctive relief in order to terminate or prevent the discrimination prohibited under Title II. However, in the context of Title II, section 2000a-3(a) is limited by section 2000a-3(c), which requires the plaintiff first to seek relief from the appropriate state or local body, provided that there exists a state or local law prohibiting the conduct actionable under federal law. Like its federal counterpart, Pennsylvania law prohibits places of public accommodation from discriminating against an individual in the full and equal access to goods

and services on the basis of a disability. 43 PA. CONS.STAT. § 953 (2003). Therefore, Defendant argues that 42 U.S.C. § 2000a-3(c) required Plaintiffs first to have sought relief from the appropriate state agency before initiating suit against Defendant. Plaintiffs respond that since 42 U.S.C. § 12188(a)(1) explicitly adopts § 2000a-3(a) only, the administrative exhaustion provision contained within § 2000a-3(c) is inapplicable to Title III cases.

Only one Court of Appeals has decided this question. The Ninth Circuit has held that the plain language of 42 U.S.C. § 12188 does not require a plaintiff in a private Title III action to exhaust administrative remedies before filing his federal lawsuit. *Botosan v. Paul McNally Realty,* 216 F.3d 827 (9th Cir.2000).[FN2] The Ninth Circuit in *Paul McNally Realty* wrote, in pertinent part:

FN2. While other Courts of Appeals have not written on the matter, *Paul McNally Realty* has been cited favorably by several district courts among the various circuits. First Circuit: *Iverson v. Comsage, Inc.,* 132 F.Supp.2d 52, 55 (D.Mass.2001); Second Circuit: *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower,* No. 01-CIV-5518(MBM), 2003 U.S. Dist. LEXIS 5145, at *35 (S .D.N.Y. Apr. 2, 2003); Eighth Circuit: *Hobleman v. Ky. Fried Chicken,* 260 F.Supp.2d 801, 805 n. 6 (D.Neb.2003).

The plain language of § 12188(a)(1) is clear and unambiguous, and it can be understood without reference to any other statutory provision. Section 12188(a)(1) is devoid of any reference to § 2000a-3(c). Yet, Congress explicitly incorporated subsection (a) of § 2000a-3 into § 12188(a)(1). The incorporation of one statutory provision to the exclusion of another must be presumed intentional under the statutory canon of *espressio unius.* Surely, "Congress obviously knew how to adopt provisions of Title VII because it expressly adopted subsection (a) ... [and it is] unlikely that Congress would absentmindedly forget to adopt a provision that appears a mere two paragraphs below the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                       Page 3
Not Reported in F.Supp.2d, 2004 WL 180044 (E.D.Pa.), 27 NDLR P 182
(Cite as: Not Reported in F.Supp.2d)

subsection it adopted."
*3 *Id.* at 832 (quoting *Botosan v. Fitzhugh,* 13 F.Supp.2d 1047, 1050 (S.D.Cal.1998))."The canon of *expressio unius est exclusio alterius* means that explicit mention of one thing in a statute implies a congressional intent to exclude similar things that were not specifically mentioned."*Collinsgru v. Palmyra Bd. of Educ.,* 161 F.3d 225, 232 (3d Cir.1998).

The Third Circuit has not precedentially decided whether the language of 42 U.S.C. § 12188 requires a plaintiff in a private Title III action to exhaust his administrative remedies before filing a federal lawsuit.[FN3] In a non-precedential opinion,[FN4] *Burkhardt v. Widener Univ., Inc.,* No. 01-2305, 2003 U.S.App. LEXIS 9004 (3d Cir. Apr. 21, 2003), when confronted with the very same issue, the Third Circuit, aware of the Ninth Circuit's opinion in *Paul McNally Realty,* accepted its rationale and holding. "The [Ninth Circuit] concluded that § 12188(a)(1) does not implicitly incorporate § 2000a-3(c). The District Court here adopted the same reasoning, and we will do so as well." 2003 U.S.App. LEXIS 9004, at *7.

> FN3. Two district courts within the Third Circuit have ruled that § 12188(a)(1) does not require exhaustion. *See**Estrada v. Trager,* No. 01-4669, 2002 U.S. Dist. LEXIS 17342, at *20 (E.D.Pa. Sept. 11, 2002) (Dalzell, J.); *Moyer v. Showboat Casino Hotel,* 56 F.Supp.2d 498 (D.N.J.1999) (Irenas, J.).

> FN4. According to Third Circuit Internal Operating Procedure 5.7, "[t]he [Third Circuit] by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court...."

Following the Third Circuit's example, this Court, having considered *Paul McNally Realty* and the canon of *expressio unius,* will adopt the reasoning contained within the Ninth Circuit's decision. Defendant argues that because the Third Circuit's opinion in *Burkhardt* is unpublished and nonprecedential, this Court conceivably could deviate from its holding. Assuming *arguendo* that *Burkhardt* has no automatic precedential control over the Court's deliberations in the instant case, this Court still is permitted, at the least, to assess the Third Circuit's reasoning and to adopt it independently, should this Court concur. *See., e.g., Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.,* 246 F.Supp.2d 394, 399 n. 1 (E.D.Pa.2002) (non-precedential Third Circuit decisions are to be used merely as persuasive authority and do not represent binding case law per se).Section 12188(a)(1) is clear and unambiguous, and this Court should give the statute its plain meaning. The statute specifies § 2000a-3(a) for incorporation, and to conclude that Congress actually intended the incorporation of any additional subsection would render superfluous Congress's explicit reference to § 2000a-3(a).*See generally**Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 202 (3d Cir.1998) ( "In interpreting a statute, courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous."). *But see* Adam A. Milani, *Go Ahead. Make My 90 Days: Should Plaintiffs Be Required to Provide Notice to Defendants Before Filing Suit Under Title III of the Americans with Disabilities Act?,*2002 WIS. L.REV. 107 (2001) (interpreting Section 12188(a)(1) as requiring a would-be Title III plaintiff to give notice to the proper state or local agency). This Court concludes that it is not its prerogative to rewrite a Congressional statute that is plain on its face, as is the case with § 12188(a)(1), even where expansive judicial construction might better effect the law's stated purpose.

B. ADI's Standing

*4 Defendant argues that ADI lacks standing to sue him. ADI contends that it has both standing in its own right, i.e., "independent standing," and standing on behalf of its members, i.e., " associational standing." As a preliminary matter, standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution."*Pub. Interest*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                     Page 4

Not Reported in F.Supp.2d, 2004 WL 180044 (E.D.Pa.), 27 NDLR P 182
**(Cite as: Not Reported in F.Supp.2d)**

*Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 117 (3d Cir.1997). First, ADI must be able to demonstrate an injury in fact, which is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). The injury in fact must be causally connected to the conduct complained of. *Id.* Moreover, the injury in fact must be fairly traceable to the defendant's challenged conduct, and not attributable to a third party not before the Court. *Id.* Lastly, it must be likely, and not merely speculative, that ADI's injury will be redressed by a favorable decision. *Id.* at 561. As it has invoked federal jurisdiction, ADI bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i .e., with the manner and degree of evidence required at the successive stages of the litigation."*Id.*

### 1. Independent Standing

"An organization has standing to sue on its own behalf if the organization itself can satisfy the irreducible constitutional minimum requirements and prudential concerns do not point to the need for judicial restraint."*Pa. Prot. & Advocacy, Inc. v. Houston,* 136 F.Supp.2d 353, 361 (E.D.Pa.2001). The Court concludes that ADI has failed to plead satisfactory information demonstrating that the advocacy group has suffered an injury sufficiently tangible to satisfy its burden at this point. ADI, as an organization, clearly is not a disabled individual, and could not have suffered an injury in the sense that Hill has. In the Complaint, the following allegations regarding ADI are made:
Plaintiff, the American Disability Institute, is a non-profit advocacy group that seeks to make public accommodations available to all individuals by ensuring that public property is in compliance with 42 U.S.C. Section 12182 and 28 C.F.R. 36.201(a). The American Disability Institute's purpose is to educate persons and business on accessibility issues and to ensure full participation of all people with all types of disabilities in every community. As part of that purpose, it seeks to ensure that people with disabilities have access to, and do not encounter discrimination in, places of public accommodation. As a result, the American Disability Institute seeks to assure that public spaces and commercial premises are accessible to, and useable by, its members, and to assure that its members are not excluded from the enjoyment and use of the benefits, services, programs, and activities of public accommodations.

*5 andPlaintiffs have retained the undersigned counsel and are obligated to pay a reasonable attorney's fee, including costs and expenses incurred in this action. Plaintiffs are entitled to recover these attorneys' fees, costs and expenses from the Defendant pursuant to 42 U.S.C. Section 12205 and 28 C.F.R. 36.505.

(Compl. ¶¶ 7 & 22.) The Court only can conclude that the only damages suffered by ADI, as alleged within the Complaint, are (1) abstract, ideological injuries and (2) litigation expenses. "An organization does not possess standing simply because it has an ideological or abstract social interest that is adversely affected by the challenged action."*Kessler Inst. for Rehab. v. Mayor of Essex Fells,* 876 F.Supp. 641, 656 (D.N.J.1995) (citation and quotation omitted). Third Circuit precedent holds that litigation expenses alone cannot confer standing. *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers,* 141 F.3d 71, 79 (3d Cir.1998).

In its reply brief, ADI fleshes out the damages beyond its allegedly affected ideological interests and its increased litigation costs. Its reply brief states, in pertinent part, "ADI has been forced to divert time, energy, effort, and other resources from educational, informational, and counseling purposes to combat the discrimination faced by its members and other disabled persons at the Defendant's place of public accommodation."(Pls.' Reply Br. at 12.) Generally, an organization has standing "to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes. "*Kessler,* 876 F.Supp. at 656. Whether these additional assertions would be sufficient to establish the organization's independent standing is irrelevant because the Court will not consider these factual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 5
Not Reported in F.Supp.2d, 2004 WL 180044 (E.D.Pa.), 27 NDLR P 182
**(Cite as: Not Reported in F.Supp.2d)**

allegations, as they are not contained within either the text of the Complaint or within any document implicated therein.[FN5] Hence, the Court will dismiss ADI's claims brought on the organization's own behalf without prejudice and give ADI, pursuant to Rule 15(a), fourteen (14) days to amend its complaint, setting forth particularized facts supportive of its standing to bring suit independently.

> FN5. The Court is uncertain whether ADI would satisfy its burden simply by pasting these assertions into an amended complaint. Damages such as those of which ADI particularly complained might be insufficient to support independent standing. *Compare Clark v. Burger King Corp.*, 255 F.Supp.2d 334, 344 (D.N.J.2003) (holding that a comparable "diversion of funds" allegation was insufficient for an ADA advocacy group to demonstrate independent standing) *with Clark v. McDonald's Corp.*, No.02-0247, 2003 U.S. Dist. LEXIS 3178, at *24-25 (D.N.J. Mar. 3, 2003) (holding that a comparable "diversion of funds" allegation was sufficient to demonstrate standing). Nonetheless, it would be premature for this Court to issue any final conclusion on this issue given that ADI will be granted leave to file an amended complaint.

2. Associational Standing

An association has standing to sue on behalf of its members when: (1) one of its members otherwise would have standing to sue on his own behalf; (2) the interests at stake are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See, e.g., Pa. Indep. Waste Haulers Ass'n v. Waste Sys. Auth.*, No. 99-1782, 2000 U.S. Dist. LEXIS 2462, at *5 (E.D.Pa. Mar. 7, 2000) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The Supreme Court has held that the third prong of this test is a prudential, not a constitutional, requirement. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

*6 The Court concludes that ADI has failed to plead satisfactory information indicating that the advocacy group qualifies for associational standing. Regarding the first prong of the *Hunt* test, courts within the Third Circuit are conflicted regarding how much specificity an organizational plaintiff must plead in order to demonstrate that its members themselves would individually have standing. *Compare Burger King Corp.*, 255 F.Supp.2d at 345 (finding that an ADA advocacy group needed to identity its members, the dates on which they visited the defendant's allegedly discriminatory facility, and their planned return dates in order to qualify for organizational standing) *with McDonald's Corp.*, 2003 U.S. Dist. LEXIS 3178, at *49-50 (finding that such specificity in the pleadings is an "exaggerated" pleading requirement). Having suffered discrimination at Defendant's place of public accommodation and having pled his interest in returning to Manoa Diner but for the allegedly discriminatory accommodations, Hill has standing to continue as a litigant. If Hill had been alleged to be an ADI member, then this Court could conclude that ADI established the first *Hunt* prong, i.e., that one of its constituent members would have standing to sue Manoa Diner on these same charges on his own behalf. However, Plaintiffs fail to plead that Hill is a member of the American Disability Institute. Plaintiffs' Reply Brief argues that "[t]he Complaint alleges that Hill is a disabled individual and a member of ADI," (Pls.' Reply Br. at 10), but this statement inaccurately summarizes the content of Plaintiffs' Complaint. The relevant allegations regarding Hill within the Complaint provide:

Plaintiff, Christopher Hill, is a Pennsylvania resident, is *sui juris* and qualifies as an individual with disabilities as defined by the ADA. Christopher Hill has visited the property which forms the basis of this lawsuit, which is located at 1305 West Chester Pike, Havertown, PA 19083 and plans to return to the property to avail himself of the goods and services offered to the public at the property.

...

Plaintiff, Christopher Hill, desires to visit the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 180044 (E.D.Pa.), 27 NDLR P 182
(Cite as: Not Reported in F.Supp.2d)

Defendant's property not only to avail himself of the goods and services available at the property, but also to assure himself that this property is in full compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

...

Plaintiff, Christopher Hill, has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

(Compl. ¶¶ 6, 9, & 11.) Moreover, ADI fails to identify any single member whose interests would confer associational standing on ADI in the instant case. Hence, the Court will dismiss ADI's claims brought on the behalf of its members without prejudice and give ADI, pursuant to Rule 15(a), fourteen (14) days to amend its complaint, setting forth particularized facts supportive of its standing to bring suit on behalf of its members.

### III. Conclusion

*7 This Court concludes that a private plaintiff is not obligated under Title III of the ADA to exhaust administrative remedies prior to filing his complaint in federal court. This Court further concludes that ADI has not pled sufficient facts to establish that it has standing, whether on an independent or associational basis, to proceed in the instant case. ADI will be granted leave to file an amended complaint in order to attempt to cure these deficiencies.

An appropriate order follows.

### ORDER

AND NOW, this day of January, 2004, upon consideration of Defendant's Motion to Dismiss the Complaint Pursuant to Federal Rule of Procedure 12(b)(1) ( Docket No. 2), it is hereby ORDERED as follows:
1. Regarding Christopher Hill, Defendant's Motion is DENIED.
2. Regarding ADI, Defendant's Motion is GRANTED. All claims brought by ADI are DISMISSED WITHOUT PREJUDICE, provided that ADI may move to amend its complaint within fourteen (14) days.
3. Regarding Plaintiffs' request for a jury trial, Defendant's Motion is DENIED AS MOOT, as Plaintiffs have withdrawn this request.

E.D.Pa.,2004.
Hill v. Park
Not Reported in F.Supp.2d, 2004 WL 180044 (E.D.Pa.), 27 NDLR P 182

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.