# Exhibit "13" to Appendix of Foreign Authorities

## Outerbridge Access Association, et al. v.
## Marie Callender's Pie Shops, Inc., et al.

# Southern District Case No. 07-CV-2129 BTM (AJB)



PL 101-336, 1990 S 933                                                                Page 1

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

### UNITED STATES PUBLIC LAWS
### 101st Congress - Second Session
### Convening January 23, 1990

Copr. © West 1990 No Claim to Orig. Govt. Works

Additions and Deletions are not identified in this document.
For Legislative History of Act, see LH database or Report for
this Public Law in U.S.C.C. & A.N. Legislative History section.

PL 101-336 (S 933)
July 26, 1990
AMERICANS WITH DISABILITIES ACT OF 1990

An Act to establish a clear and comprehensive prohibition of discrimination on the basis of disability.

Be it enacted by the Senate and House of Representatives of the United States
of America in Congress assembled,

SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

<< 42 USCA § 12101 NOTE >>

(a) SHORT TITLE.--This Act may be cited as the "Americans with Disabilities Act of 1990".

(b) TABLE OF CONTENTS.--The table of contents is as follows:

Sec. 1. Short title; table of contents.

Sec. 2. Findings and purposes.

Sec. 3. Definitions.

TITLE I--EMPLOYMENT

Sec. 101. Definitions.

Sec. 102. Discrimination.

Sec. 103. Defenses.

Sec. 104. Illegal use of drugs and alcohol.

Copr. © West 2007 No Claim to Orig. Govt. Works

**EXHIBIT  13**

http://web2.westlaw.com/print/printstream.aspx?vr=2.0&rs=WLW7.11&prft=HTMLE&f    11/29/2007

PL 101-336, 1990 S 933                                                    Page 2

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

Sec. 105. Posting notices.

Sec. 106. Regulations.

Sec. 107. Enforcement.

Sec. 108. Effective date.

### TITLE II--PUBLIC SERVICES
Subtitle A--Prohibition Against Discrimination and Other Generally Applicable
Provisions

Sec. 201. Definition.

Sec. 202. Discrimination.

Sec. 203. Enforcement.

Sec. 204. Regulations.

Sec. 205. Effective date.

Subtitle B--Actions Applicable to Public Transportation Provided by Public
Entities Considered Discriminatory
PART I--PUBLIC TRANSPORTATION OTHER THAN BY AIRCRAFT OR CERTAIN RAIL OPERATIONS
Sec. 221. Definitions.

Sec. 222. Public entities operating fixed route systems.

Sec. 223. Paratransit as a complement to fixed route service.

Sec. 224. Public entity operating a demand responsive system.

Sec. 225. Temporary relief where lifts are unavailable.

Sec. 226. New facilities.

Sec. 227. Alterations of existing facilities.

Sec. 228. Public transportation programs and activities in existing facilities and one car per train rule.

Sec. 229. Regulations.

Sec. 230. Interim accessibility requirements.

Sec. 231. Effective date.

PART II--PUBLIC TRANSPORTATION BY INTERCITY AND COMMUTER RAIL
Sec. 241. Definitions.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933                                                    Page 3

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

Sec. 242. Intercity and commuter rail actions considered discriminatory.

Sec. 243. Conformance of accessibility standards.

**\*328** Sec. 244. Regulations.

Sec. 245. Interim accessibility requirements.

Sec. 246. Effective date.

TITLE III--PUBLIC ACCOMMODATIONS AND SERVICES OPERATED BY PRIVATE ENTITIES
Sec. 301. Definitions.

Sec. 302. Prohibition of discrimination by public accommodations.

Sec. 303. New construction and alterations in public accommodations and commercial facilities.

Sec. 304. Prohibition of discrimination in specified public transportation services provided by private entities.

Sec. 305. Study.

Sec. 306. Regulations.

Sec. 307. Exemptions for private clubs and religious organizations.

Sec. 308. Enforcement.

Sec. 309. Examinations and courses.

Sec. 310. Effective date.

TITLE IV--TELECOMMUNICATIONS
Sec. 401. Telecommunications relay services for hearing-impaired and speech-impaired individuals.

Sec. 402. Closed-captioning of public service announcements.

TITLE V--MISCELLANEOUS PROVISIONS
Sec. 501. Construction.

Sec. 502. State immunity.

Sec. 503. Prohibition against retaliation and coercion.

Sec. 504. Regulations by the Architectural and Transportation Barriers Compliance Board.

Sec. 505. Attorney's fees.

Sec. 506. Technical assistance.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

Sec. 507. Federal wilderness areas.

Sec. 508. Transvestites.

Sec. 509. Coverage of Congress and the agencies of the legislative branch.

Sec. 510. Illegal use of drugs.

Sec. 511. Definitions.

Sec. 512. Amendments to the Rehabilitation Act.

Sec. 513. Alternative means of dispute resolution.

Sec. 514. Severability.

<< 42 USCA § 12101 >>

SEC. 2. FINDINGS AND PURPOSES.

(a) FINDINGS.--The Congress finds that--

(1) some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, **\*329** failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7) individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society;

(8) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and

(9) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

(b) PURPOSE.--It is the purpose of this Act--

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

<< 42 USCA § 12102 >>

SEC. 3. DEFINITIONS.

As used in this Act:

(1) AUXILIARY AIDS AND SERVICES.--The term "auxiliary aids and services" includes--

(A) qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments;

(B) qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments;

(C) acquisition or modification of equipment or devices;  and

(D) other similar services and actions.

(2) DISABILITY.--The term "disability" means, with respect to an individual--

*330 (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(B) a record of such an impairment;  or

(C) being regarded as having such an impairment.

(3) STATE.--The term "State" means each of the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, the Trust Territory of the Pacific Islands, and the Commonwealth of the Northern Mariana Islands.

## TITLE I--EMPLOYMENT

<< 42 USCA § 12111 >>

SEC. 101. DEFINITIONS.

As used in this title:

(1) COMMISSION.--The term "Commission" means the Equal Employment Opportunity Commission established by section 705 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-4).

(2) COVERED ENTITY.--The term "covered entity" means an employer, employment agency, labor organization, or joint labor-management committee.

(3) DIRECT THREAT.--The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.

(4) EMPLOYEE.--The term "employee" means an individual employed by an employer.

(5) EMPLOYER.--

(A) IN GENERAL.--The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this title, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person.

(B) EXCEPTIONS.--The term "employer" does not include--

(i) the United States, a corporation wholly owned by the government of the United States, or an Indian tribe;  or

(ii) a bona fide private membership club (other than a labor organization) that is exempt from taxation under section 501(c) of the Internal Revenue Code of 1986.

(6) ILLEGAL USE OF DRUGS.--

(A) IN GENERAL.--The term "illegal use of drugs" means the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act (21 U.S.C. 812). Such term does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(B) DRUGS.--The term "drug" means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act.

*331 (7) PERSON, ETC.--The terms "person", "labor organization", "employment agency", "commerce", and "industry affecting commerce", shall have the same meaning given such terms in section 701 of the Civil Rights Act of 1964 (42 U.S.C. 2000e).

(8) QUALIFIED INDIVIDUAL WITH A DISABILITY.--The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this title, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

(9) REASONABLE ACCOMMODATION.--The term "reasonable accommodation" may include--

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

(10) UNDUE HARDSHIP.--

(A) IN GENERAL.--The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B).

(B) FACTORS TO BE CONSIDERED.--In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include--

(i) the nature and cost of the accommodation needed under this Act;

(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

<< 42 USCA § 12112 >>

SEC. 102. DISCRIMINATION.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(a) GENERAL RULE.--No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, *332 job training, and other terms, conditions, and privileges of employment.

(b) CONSTRUCTION.--As used in subsection (a), the term "discriminate" includes--

(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this title (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

(3) utilizing standards, criteria, or methods of administration--

  (A) that have the effect of discrimination on the basis of disability;  or

  (B) that perpetuate the discrimination of others who are subject to common administrative control;

(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;

(6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and

(7) failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure).

(c) MEDICAL EXAMINATIONS AND INQUIRIES.--

(1) IN GENERAL.--The prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

*333 (2) PREEMPLOYMENT.--

(A) PROHIBITED EXAMINATION OR INQUIRY.--Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.

(B) ACCEPTABLE INQUIRY.--A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

(3) EMPLOYMENT ENTRANCE EXAMINATION.--A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination, if--

(A) all entering employees are subjected to such an examination regardless of disability;

(B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except that--

(i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;

(ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and

(iii) government officials investigating compliance with this Act shall be provided relevant information on request; and

(C) the results of such examination are used only in accordance with this title.

(4) EXAMINATION AND INQUIRY.--

(A) PROHIBITED EXAMINATIONS AND INQUIRIES.--A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

(B) ACCEPTABLE EXAMINATIONS AND INQUIRIES.--A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

(C) REQUIREMENT.--Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).

<< 42 USCA § 12113 >>

SEC. 103. DEFENSES.

(a) IN GENERAL.--It may be a defense to a charge of discrimination under this Act that an alleged application of

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, *334 and such performance cannot be accomplished by reasonable accommodation, as required under this title.

(b) QUALIFICATION STANDARDS.--The term "qualification standards" may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace.

(c) RELIGIOUS ENTITIES.--

(1) IN GENERAL.--This title shall not prohibit a religious corporation, association, educational institution, or society from giving preference in employment to individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

(2) RELIGIOUS TENETS REQUIREMENT.--Under this title, a religious organization may require that all applicants and employees conform to the religious tenets of such organization.

(d) LIST OF INFECTIOUS AND COMMUNICABLE DISEASES.--

(1) IN GENERAL.--The Secretary of Health and Human Services, not later than 6 months after the date of enactment of this Act, shall--

(A) review all infectious and communicable diseases which may be transmitted through handling the food supply;

(B) publish a list of infectious and communicable diseases which are transmitted through handling the food supply;

(C) publish the methods by which such diseases are transmitted; and

(D) widely disseminate such information regarding the list of diseases and their modes of transmissability to the general public.

Such list shall be updated annually.

(2) APPLICATIONS.--In any case in which an individual has an infectious or communicable disease that is transmitted to others through the handling of food, that is included on the list developed by the Secretary of Health and Human Services under paragraph (1), and which cannot be eliminated by reasonable accommodation, a covered entity may refuse to assign or continue to assign such individual to a job involving food handling.

(3) CONSTRUCTION.--Nothing in this Act shall be construed to preempt, modify, or amend any State, county, or local law, ordinance, or regulation applicable to food handling which is designed to protect the public health from individuals who pose a significant risk to the health or safety of others, which cannot be eliminated by reasonable accommodation, pursuant to the list of infectious or communicable diseases and the modes of transmissability published by the Secretary of Health and Human Services.

<< 42 USCA § 12114 >>

SEC. 104. ILLEGAL USE OF DRUGS AND ALCOHOL.

(a) QUALIFIED INDIVIDUAL WITH A DISABILITY.--For purposes of this title, the term "qualified individual

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933                                                    Page 11

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

with a disability" shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.

**\*335** (b) RULES OF CONSTRUCTION.--Nothing in subsection (a) shall be construed to exclude as a qualified individual with a disability an individual who--

(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

(2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or

(3) is erroneously regarded as engaging in such use, but is not engaging in such use;

except that it shall not be a violation of this Act for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in paragraph (1) or (2) is no longer engaging in the illegal use of drugs.

(c) AUTHORITY OF COVERED ENTITY.--A covered entity--

(1) may prohibit the illegal use of drugs and the use of alcohol at the workplace by all employees;

(2) may require that employees shall not be under the influence of alcohol or be engaging in the illegal use of drugs at the workplace;

(3) may require that employees behave in conformance with the requirements established under the Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.);

(4) may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee; and

(5) may, with respect to Federal regulations regarding alcohol and the illegal use of drugs, require that--

(A) employees comply with the standards established in such regulations of the Department of Defense, if the employees of the covered entity are employed in an industry subject to such regulations, including complying with regulations (if any) that apply to employment in sensitive positions in such an industry, in the case of employees of the covered entity who are employed in such positions (as defined in the regulations of the Department of Defense);

(B) employees comply with the standards established in such regulations of the Nuclear Regulatory Commission, if the employees of the covered entity are employed in an industry subject to such regulations, including complying with regulations (if any) that apply to employment in sensitive positions in such an industry, in the case of employees of the covered entity who are employed in such positions (as defined in the regulations of the Nuclear Regulatory Commission); and

(C) employees comply with the standards established in such regulations of the Department of Transportation, if the employees of the covered entity are employed in a transportation industry subject to such regulations, including complying with such regulations (if any) that apply to employment in sensitive positions in such an industry, in the case of employees of the covered entity who are employed **\*336** in such positions (as defined in the regulations of the Department of Transportation).

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(d) DRUG TESTING.--

(1) IN GENERAL.--For purposes of this title, a test to determine the illegal use of drugs shall not be considered a medical examination.

(2) CONSTRUCTION.--Nothing in this title shall be construed to encourage, prohibit, or authorize the conducting of drug testing for the illegal use of drugs by job applicants or employees or making employment decisions based on such test results.

(e) TRANSPORTATION EMPLOYEES.--Nothing in this title shall be construed to encourage, prohibit, restrict, or authorize the otherwise lawful exercise by entities subject to the jurisdiction of the Department of Transportation of authority to--

(1) test employees of such entities in, and applicants for, positions involving safety-sensitive duties for the illegal use of drugs and for on-duty impairment by alcohol; and

(2) remove such persons who test positive for illegal use of drugs and on-duty impairment by alcohol pursuant to paragraph (1) from safety-sensitive duties in implementing subsection (c).

<< 42 USCA § 12115 >>

SEC. 105. POSTING NOTICES.

Every employer, employment agency, labor organization, or joint labor-management committee covered under this title shall post notices in an accessible format to applicants, employees, and members describing the applicable provisions of this Act, in the manner prescribed by section 711 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-10).

<< 42 USCA § 12116 >>

SEC. 106. REGULATIONS.

Not later than 1 year after the date of enactment of this Act, the Commission shall issue regulations in an accessible format to carry out this title in accordance with subchapter II of chapter 5 of title 5, United States Code.

<< 42 USCA § 12117 >>

SEC. 107. ENFORCEMENT.

(a) POWERS, REMEDIES, AND PROCEDURES.--The powers, remedies, and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this Act, or regulations promulgated under section 106, concerning employment.

(b) COORDINATION.--The agencies with enforcement authority for actions which allege employment discrimination under this title and under the Rehabilitation Act of 1973 shall develop procedures to ensure that administrative complaints filed under this title and under the Rehabilitation Act of 1973 are dealt with in a manner that avoids duplication of effort and prevents imposition of inconsistent or conflicting standards for the same

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

requirements under this title and the Rehabilitation Act of 1973. The Commission, the Attorney General, and the Office of Federal Contract Compliance Programs shall establish such coordinating mechanisms (similar to provisions contained in the joint regulations promulgated by the Commission and the Attorney General at part 42 of title 28 and *337 part 1691 of title 29, Code of Federal Regulations, and the Memorandum of Understanding between the Commission and the Office of Federal Contract Compliance Programs dated January 16, 1981 (46 Fed.Reg. 7435, January 23, 1981)) in regulations implementing this title and Rehabilitation Act of 1973 not later than 18 months after the date of enactment of this Act.

<< 42 USCA §§ 12111 NOTE, 12112 nt, 12113 nt, 12114 nt, 12115 nt, 12116 nt,
12117 nt >>

SEC. 108. EFFECTIVE DATE.

This title shall become effective 24 months after the date of enactment.

TITLE II--PUBLIC SERVICES
Subtitle A--Prohibition Against Discrimination and Other Generally Applicable
Provisions

<< 42 USCA § 12131 >>

SEC. 201. DEFINITION.

As used in this title:

(1) PUBLIC ENTITY.--The term "public entity" means--

(A) any State or local government;

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act).

(2) QUALIFIED INDIVIDUAL WITH A DISABILITY.--The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

<< 42 USCA § 12132 >>

SEC. 202. DISCRIMINATION.

Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

<< 42 USCA § 12133 >>

SEC. 203. ENFORCEMENT.

The remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. 794a) shall be the remedies, procedures, and rights this title provides to any person alleging discrimination on the basis of disability in violation of section 202.

<< 42 USCA § 12134 >>

SEC. 204. REGULATIONS.

(a) IN GENERAL.--Not later than 1 year after the date of enactment of this Act, the Attorney General shall promulgate regulations in an accessible format that implement this subtitle. Such regulations shall not include any matter within the scope of the authority of the Secretary of Transportation under section 223, 229, or 244.

*338 (b) RELATIONSHIP TO OTHER REGULATIONS.--Except for "program accessibility, existing facilities", and "communications", regulations under subsection (a) shall be consistent with this Act and with the coordination regulations under part 41 of title 28, Code of Federal Regulations (as promulgated by the Department of Health, Education, and Welfare on January 13, 1978), applicable to recipients of Federal financial assistance under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794). With respect to "program accessibility, existing facilities", and "communications", such regulations shall be consistent with regulations and analysis as in part 39 of title 28 of the Code of Federal Regulations, applicable to federally conducted activities under such section 504.

(c) STANDARDS.--Regulations under subsection (a) shall include standards applicable to facilities and vehicles covered by this subtitle, other than facilities, stations, rail passenger cars, and vehicles covered by subtitle B. Such standards shall be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board in accordance with section 504(a) of this Act.

SEC. 205. EFFECTIVE DATE.

<< 42 USCA §§ 12131 NOTE, 12132 nt, 12133 nt, 12134 nt >>

(a) GENERAL RULE.--Except as provided in subsection (b), this subtitle shall become effective 18 months after the date of enactment of this Act.

<< 42 USCA § 12131 NOTE >>

(b) EXCEPTION.--Section 204 shall become effective on the date of enactment of this Act.

Subtitle B--Actions Applicable to Public Transportation Provided by Public
Entities Considered Discriminatory
PART I--PUBLIC TRANSPORTATION OTHER THAN BY AIRCRAFT OR CERTAIN RAIL OPERATIONS

<< 42 USCA § 12141 >>

SEC. 221. DEFINITIONS.

As used in this part:

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(1) DEMAND RESPONSIVE SYSTEM.--The term "demand responsive system" means any system of providing designated public transportation which is not a fixed route system.

(2) DESIGNATED PUBLIC TRANSPORTATION.--The term "designated public transportation" means transportation (other than public school transportation) by bus, rail, or any other conveyance (other than transportation by aircraft or intercity or commuter rail transportation (as defined in section 241)) that provides the general public with general or special service (including charter service) on a regular and continuing basis.

(3) FIXED ROUTE SYSTEM.--The term "fixed route system" means a system of providing designated public transportation on which a vehicle is operated along a prescribed route according to a fixed schedule.

(4) OPERATES.--The term "operates", as used with respect to a fixed route system or demand responsive system, includes operation of such system by a person under a contractual or other arrangement or relationship with a public entity.

**\*339** (5) PUBLIC SCHOOL TRANSPORTATION.--The term "public school transportation" means transportation by schoolbus vehicles of schoolchildren, personnel, and equipment to and from a public elementary or secondary school and school-related activities.

(6) SECRETARY.--The term "Secretary" means the Secretary of Transportation.

<< 42 USCA § 12142 >>

SEC. 222. PUBLIC ENTITIES OPERATING FIXED ROUTE SYSTEMS.

(a) PURCHASE AND LEASE OF NEW VEHICLES.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a public entity which operates a fixed route system to purchase or lease a new bus, a new rapid rail vehicle, a new light rail vehicle, or any other new vehicle to be used on such system, if the solicitation for such purchase or lease is made after the 30th day following the effective date of this subsection and if such bus, rail vehicle, or other vehicle is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

(b) PURCHASE AND LEASE OF USED VEHICLES.--Subject to subsection (c)(1), it shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a public entity which operates a fixed route system to purchase or lease, after the 30th day following the effective date of this subsection, a used vehicle for use on such system unless such entity makes demonstrated good faith efforts to purchase or lease a used vehicle for use on such system that is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

(c) REMANUFACTURED VEHICLES.--

(1) GENERAL RULE.--Except as provided in paragraph (2), it shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a public entity which operates a fixed route system--

(A) to remanufacture a vehicle for use on such system so as to extend its usable life for 5 years or more, which remanufacture begins (or for which the solicitation is made) after the 30th day following the effective date of this subsection; or

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(B) to purchase or lease for use on such system a remanufactured vehicle which has been remanufactured so as to extend its usable life for 5 years or more, which purchase or lease occurs after such 30th day and during the period in which the usable life is extended;

unless, after remanufacture, the vehicle is, to the maximum extent feasible, readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

(2) EXCEPTION FOR HISTORIC VEHICLES.--

(A) GENERAL RULE.--If a public entity operates a fixed route system any segment of which is included on the National Register of Historic Places and if making a vehicle of historic character to be used solely on such segment readily accessible to and usable by individuals with disabilities would significantly alter the historic character of such vehicle, the public entity only has to make (or to purchase or lease a remanufactured vehicle with) those modifications which are necessary to meet the requirements of paragraph *340 (1) and which do not significantly alter the historic character of such vehicle.

(B) VEHICLES OF HISTORIC CHARACTER DEFINED BY REGULATIONS.--For purposes of this paragraph and section 228(b), a vehicle of historic character shall be defined by the regulations issued by the Secretary to carry out this subsection.

<< 42 USCA § 12143 >>

SEC. 223. PARATRANSIT AS A COMPLEMENT TO FIXED ROUTE SERVICE.

(a) GENERAL RULE.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a public entity which operates a fixed route system (other than a system which provides solely commuter bus service) to fail to provide with respect to the operations of its fixed route system, in accordance with this section, paratransit and other special transportation services to individuals with disabilities, including individuals who use wheelchairs, that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system; or (2) in the case of response time, which is comparable, to the extent practicable, to the level of designated public transportation services provided to individuals without disabilities using such system.

(b) ISSUANCE OF REGULATIONS.--Not later than 1 year after the effective date of this subsection, the Secretary shall issue final regulations to carry out this section.

(c) REQUIRED CONTENTS OF REGULATIONS.--

(1) ELIGIBLE RECIPIENTS OF SERVICE.--The regulations issued under this section shall require each public entity which operates a fixed route system to provide the paratransit and other special transportation services required under this section--

(A)(i) to any individual with a disability who is unable, as a result of a physical or mental impairment (including a vision impairment) and without the assistance of another individual (except an operator of a wheelchair lift or other boarding assistance device), to board, ride, or disembark from any vehicle on the system which is readily accessible to and usable by individuals with disabilities;

(ii) to any individual with a disability who needs the assistance of a wheelchair lift or other boarding assistance

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

device (and is able with such assistance) to board, ride, and disembark from any vehicle which is readily accessible to and usable by individuals with disabilities if the individual wants to travel on a route on the system during the hours of operation of the system at a time (or within a reasonable period of such time) when such a vehicle is not being used to provide designated public transportation on the route; and

(iii) to any individual with a disability who has a specific impairment-related condition which prevents such individual from traveling to a boarding location or from a disembarking location on such system;

(B) to one other individual accompanying the individual with the disability; and

(C) to other individuals, in addition to the one individual described in subparagraph (B), accompanying the individual with a disability provided that space for these additional individuals is available on the paratransit vehicle carrying *341 the individual with a disability and that the transportation of such additional individuals will not result in a denial of service to individuals with disabilities.

For purposes of clauses (i) and (ii) of subparagraph (A), boarding or disembarking from a vehicle does not include travel to the boarding location or from the disembarking location.

(2) SERVICE AREA.--The regulations issued under this section shall require the provision of paratransit and special transportation services required under this section in the service area of each public entity which operates a fixed route system, other than any portion of the service area in which the public entity solely provides commuter bus service.

(3) SERVICE CRITERIA.--Subject to paragraphs (1) and (2), the regulations issued under this section shall establish minimum service criteria for determining the level of services to be required under this section.

(4) UNDUE FINANCIAL BURDEN LIMITATION.--The regulations issued under this section shall provide that, if the public entity is able to demonstrate to the satisfaction of the Secretary that the provision of paratransit and other special transportation services otherwise required under this section would impose an undue financial burden on the public entity, the public entity, notwithstanding any other provision of this section (other than paragraph (5)), shall only be required to provide such services to the extent that providing such services would not impose such a burden.

(5) ADDITIONAL SERVICES.--The regulations issued under this section shall establish circumstances under which the Secretary may require a public entity to provide, notwithstanding paragraph (4), paratransit and other special transportation services under this section beyond the level of paratransit and other special transportation services which would otherwise be required under paragraph (4).

(6) PUBLIC PARTICIPATION.--The regulations issued under this section shall require that each public entity which operates a fixed route system hold a public hearing, provide an opportunity for public comment, and consult with individuals with disabilities in preparing its plan under paragraph (7).

(7) PLANS.--The regulations issued under this section shall require that each public entity which operates a fixed route system--

(A) within 18 months after the effective date of this subsection, submit to the Secretary, and commence implementation of, a plan for providing paratransit and other special transportation services which meets the requirements of this section; and

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933                                                                                    Page 18

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(B) on an annual basis thereafter, submit to the Secretary, and commence implementation of, a plan for providing such services.

(8) PROVISION OF SERVICES BY OTHERS.--The regulations issued under this section shall--

(A) require that a public entity submitting a plan to the Secretary under this section identify in the plan any person or other public entity which is providing a paratransit or other special transportation service for individuals with disabilities in the service area to which the plan applies; and

*342 (B) provide that the public entity submitting the plan does not have to provide under the plan such service for individuals with disabilities.

(9) OTHER PROVISIONS.--The regulations issued under this section shall include such other provisions and requirements as the Secretary determines are necessary to carry out the objectives of this section.

(d) REVIEW OF PLAN.--

(1) GENERAL RULE.--The Secretary shall review a plan submitted under this section for the purpose of determining whether or not such plan meets the requirements of this section, including the regulations issued under this section.

(2) DISAPPROVAL.--If the Secretary determines that a plan reviewed under this subsection fails to meet the requirements of this section, the Secretary shall disapprove the plan and notify the public entity which submitted the plan of such disapproval and the reasons therefor.

(3) MODIFICATION OF DISAPPROVED PLAN.--Not later than 90 days after the date of disapproval of a plan under this subsection, the public entity which submitted the plan shall modify the plan to meet the requirements of this section and shall submit to the Secretary, and commence implementation of, such modified plan.

(e) DISCRIMINATION DEFINED.--As used in subsection (a), the term "discrimination" includes--

(1) a failure of a public entity to which the regulations issued under this section apply to submit, or commence implementation of, a plan in accordance with subsections (c)(6) and (c)(7);

(2) a failure of such entity to submit, or commence implementation of, a modified plan in accordance with subsection (d)(3);

(3) submission to the Secretary of a modified plan under subsection (d)(3) which does not meet the requirements of this section; or

(4) a failure of such entity to provide paratransit or other special transportation services in accordance with the plan or modified plan the public entity submitted to the Secretary under this section.

(f) STATUTORY CONSTRUCTION.--Nothing in this section shall be construed as preventing a public entity--

(1) from providing paratransit or other special transportation services at a level which is greater than the level of such services which are required by this section,

(2) from providing paratransit or other special transportation services in addition to those paratransit and special

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

transportation services required by this section, or

(3) from providing such services to individuals in addition to those individuals to whom such services are required to be provided by this section.

<< 42 USCA § 12144 >>

### SEC. 224. PUBLIC ENTITY OPERATING A DEMAND RESPONSIVE SYSTEM.

If a public entity operates a demand responsive system, it shall be considered discrimination, for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), for such entity to purchase or lease a new vehicle for use on such system, for which a solicitation is made after the 30th day following the effective date of this section, that is not readily accessible to and usable *343 by individuals with disabilities, including individuals who use wheelchairs, unless such system, when viewed in its entirety, provides a level of service to such individuals equivalent to the level of service such system provides to individuals without disabilities.

<< 42 USCA § 12145 >>

### SEC. 225. TEMPORARY RELIEF WHERE LIFTS ARE UNAVAILABLE.

(a) GRANTING.--With respect to the purchase of new buses, a public entity may apply for, and the Secretary may temporarily relieve such public entity from the obligation under section 222(a) or 224 to purchase new buses that are readily accessible to and usable by individuals with disabilities if such public entity demonstrates to the satisfaction of the Secretary--

(1) that the initial solicitation for new buses made by the public entity specified that all new buses were to be lift-equipped and were to be otherwise accessible to and usable by individuals with disabilities;

(2) the unavailability from any qualified manufacturer of hydraulic, electromechanical, or other lifts for such new buses;

(3) that the public entity seeking temporary relief has made good faith efforts to locate a qualified manufacturer to supply the lifts to the manufacturer of such buses in sufficient time to comply with such solicitation; and

(4) that any further delay in purchasing new buses necessary to obtain such lifts would significantly impair transportation services in the community served by the public entity.

(b) DURATION AND NOTICE TO CONGRESS.--Any relief granted under subsection (a) shall be limited in duration by a specified date, and the appropriate committees of Congress shall be notified of any such relief granted.

(c) FRAUDULENT APPLICATION.--If, at any time, the Secretary has reasonable cause to believe that any relief granted under subsection (a) was fraudulently applied for, the Secretary shall--

(1) cancel such relief if such relief is still in effect; and

(2) take such other action as the Secretary considers appropriate.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

<< 42 USCA § 12146 >>

SEC. 226. NEW FACILITIES.

For purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), it shall be considered discrimination for a public entity to construct a new facility to be used in the provision of designated public transportation services unless such facility is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

<< 42 USCA § 12147 >>

SEC. 227. ALTERATIONS OF EXISTING FACILITIES.

(a) GENERAL RULE.--With respect to alterations of an existing facility or part thereof used in the provision of designated public transportation services that affect or could affect the usability of the facility or part thereof, it shall be considered discrimination, for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), for a public entity to fail to make such alterations (or to ensure that the alterations are made) in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations. Where the public entity is undertaking an alteration that affects or could affect usability of or *344 access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon completion of such alterations, where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General).

(b) SPECIAL RULE FOR STATIONS.--

(1) GENERAL RULE.--For purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), it shall be considered discrimination for a public entity that provides designated public transportation to fail, in accordance with the provisions of this subsection, to make key stations (as determined under criteria established by the Secretary by regulation) in rapid rail and light rail systems readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

(2) RAPID RAIL AND LIGHT RAIL KEY STATIONS.--

(A) ACCESSIBILITY.--Except as otherwise provided in this paragraph, all key stations (as determined under criteria established by the Secretary by regulation) in rapid rail and light rail systems shall be made readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, as soon as practicable but in no event later than the last day of the 3-year period beginning on the effective date of this paragraph.

(B) EXTENSION FOR EXTRAORDINARILY EXPENSIVE STRUCTURAL CHANGES.--The Secretary may extend the 3-year period under subparagraph (A) up to a 30-year period for key stations in a rapid rail or light rail system which stations need extraordinarily expensive structural changes to, or replacement of, existing facilities; except that by the last day of the 20th year following the date of the enactment of this Act at least 2/3 of such key stations must be readily accessible to and usable by individuals with disabilities.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(3) PLANS AND MILESTONES.--The Secretary shall require the appropriate public entity to develop and submit to the Secretary a plan for compliance with this subsection--

(A) that reflects consultation with individuals with disabilities affected by such plan and the results of a public hearing and public comments on such plan, and

(B) that establishes milestones for achievement of the requirements of this subsection.

<< 42 USCA § 12148 >>

SEC. 228. PUBLIC TRANSPORTATION PROGRAMS AND ACTIVITIES IN EXISTING FACILITIES AND ONE CAR PER TRAIN RULE.

(a) PUBLIC TRANSPORTATION PROGRAMS AND ACTIVITIES IN EXISTING FACILITIES.--

(1) IN GENERAL.--With respect to existing facilities used in the provision of designated public transportation services, it shall be considered discrimination, for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. *345 794), for a public entity to fail to operate a designated public transportation program or activity conducted in such facilities so that, when viewed in the entirety, the program or activity is readily accessible to and usable by individuals with disabilities.

(2) EXCEPTION.--Paragraph (1) shall not require a public entity to make structural changes to existing facilities in order to make such facilities accessible to individuals who use wheelchairs, unless and to the extent required by section 227(a) (relating to alterations) or section 227(b) (relating to key stations).

(3) UTILIZATION.--Paragraph (1) shall not require a public entity to which paragraph (2) applies, to provide to individuals who use wheelchairs services made available to the general public at such facilities when such individuals could not utilize or benefit from such services provided at such facilities.

(b) ONE CAR PER TRAIN RULE.--

(1) GENERAL RULE.--Subject to paragraph (2), with respect to 2 or more vehicles operated as a train by a light or rapid rail system, for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), it shall be considered discrimination for a public entity to fail to have at least 1 vehicle per train that is accessible to individuals with disabilities, including individuals who use wheelchairs, as soon as practicable but in no event later than the last day of the 5-year period beginning on the effective date of this section.

(2) HISTORIC TRAINS.--In order to comply with paragraph (1) with respect to the remanufacture of a vehicle of historic character which is to be used on a segment of a light or rapid rail system which is included on the National Register of Historic Places, if making such vehicle readily accessible to and usable by individuals with disabilities would significantly alter the historic character of such vehicle, the public entity which operates such system only has to make (or to purchase or lease a remanufactured vehicle with) those modifications which are necessary to meet the requirements of section 222(c)(1) and which do not significantly alter the historic character of such vehicle.

<< 42 USCA § 12149 >>

SEC. 229. REGULATIONS.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(a) IN GENERAL.--Not later than 1 year after the date of enactment of this Act, the Secretary of Transportation shall issue regulations, in an accessible format, necessary for carrying out this part (other than section 223).

(b) STANDARDS.--The regulations issued under this section and section 223 shall include standards applicable to facilities and vehicles covered by this subtitle. The standards shall be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board in accordance with section 504 of this Act.

<< 42 USCA § 12150 >>

## SEC. 230. INTERIM ACCESSIBILITY REQUIREMENTS.

If final regulations have not been issued pursuant to section 229, for new construction or alterations for which a valid and appropriate State or local building permit is obtained prior to the issuance of final regulations under such section, and for which the construction or alteration authorized by such permit begins within one year of the receipt of such permit and is completed under the terms of *346 such permit, compliance with the Uniform Federal Accessibility Standards in effect at the time the building permit is issued shall suffice to satisfy the requirement that facilities be readily accessible to and usable by persons with disabilities as required under sections 226 and 227, except that, if such final regulations have not been issued one year after the Architectural and Transportation Barriers Compliance Board has issued the supplemental minimum guidelines required under section 504(a) of this Act, compliance with such supplemental minimum guidelines shall be necessary to satisfy the requirement that facilities be readily accessible to and usable by persons with disabilities prior to issuance of the final regulations.

## SEC. 231. EFFECTIVE DATE.

<< 42 USCA §§ 12141 NOTE, 12142 nt, 12143 nt, 12144 nt, 12145 nt, 12146 nt,
12147 nt, 12148 nt, 12149 nt, 12150 nt >>

(a) GENERAL RULE.--Except as provided in subsection (b), this part shall become effective 18 months after the date of enactment of this Act.

<< 42 USCA § 12141 NOTE >>

(b) EXCEPTION.--Sections 222, 223 (other than subsection (a)), 224, 225, 227(b), 228(b), and 229 shall become effective on the date of enactment of this Act.

## PART II--PUBLIC TRANSPORTATION BY INTERCITY AND COMMUTER RAIL

<< 42 USCA § 12161 >>

## SEC. 241. DEFINITIONS.

As used in this part:

(1) COMMUTER AUTHORITY.--The term "commuter authority" has the meaning given such term in section 103(8) of the Rail Passenger Service Act (45 U.S.C. 502(8)).

(2) COMMUTER RAIL TRANSPORTATION.--The term "commuter rail transportation" has the meaning given the term "commuter service" in section 103(9) of the Rail Passenger Service Act (45 U.S.C. 502(9)).

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(3) INTERCITY RAIL TRANSPORTATION.--The term "intercity rail transportation" means transportation provided by the National Railroad Passenger Corporation.

(4) RAIL PASSENGER CAR.--The term "rail passenger car" means, with respect to intercity rail transportation, single-level and bi-level coach cars, single-level and bi-level dining cars, single-level and bi-level sleeping cars, single-level and bi-level lounge cars, and food service cars.

(5) RESPONSIBLE PERSON.--The term "responsible person" means--

  (A) in the case of a station more than 50 percent of which is owned by a public entity, such public entity;

  (B) in the case of a station more than 50 percent of which is owned by a private party, the persons providing intercity or commuter rail transportation to such station, as allocated on an equitable basis by regulation by the Secretary of Transportation; and

  (C) in a case where no party owns more than 50 percent of a station, the persons providing intercity or commuter rail transportation to such station and the owners of the station, other than private party owners, as allocated on an equitable basis by regulation by the Secretary of Transportation.

**\*347** (6) STATION.--The term "station" means the portion of a property located appurtenant to a right-of-way on which intercity or commuter rail transportation is operated, where such portion is used by the general public and is related to the provision of such transportation, including passenger platforms, designated waiting areas, ticketing areas, restrooms, and, where a public entity providing rail transportation owns the property, concession areas, to the extent that such public entity exercises control over the selection, design, construction, or alteration of the property, but such term does not include flag stops.

<< 42 USCA § 12162 >>

SEC. 242. INTERCITY AND COMMUTER RAIL ACTIONS CONSIDERED DISCRIMINATORY.

(a) INTERCITY RAIL TRANSPORTATION.--

(1) ONE CAR PER TRAIN RULE.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person who provides intercity rail transportation to fail to have at least one passenger car per train that is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in accordance with regulations issued under section 244, as soon as practicable, but in no event later than 5 years after the date of enactment of this Act.

(2) NEW INTERCITY CARS.--

  (A) GENERAL RULE.--Except as otherwise provided in this subsection with respect to individuals who use wheelchairs, it shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person to purchase or lease any new rail passenger cars for use in intercity rail transportation, and for which a solicitation is made later than 30 days after the effective date of this section, unless all such rail cars are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, as prescribed by the Secretary of Transportation in regulations issued under section 244.

  (B) SPECIAL RULE FOR SINGLE-LEVEL PASSENGER COACHES FOR INDIVIDUALS WHO USE

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933                                                          Page 24

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

WHEELCHAIRS.--Single-level passenger coaches shall be required to--

(i) be able to be entered by an individual who uses a wheelchair;

(ii) have space to park and secure a wheelchair;

(iii) have a seat to which a passenger in a wheelchair can transfer, and a space to fold and store such passenger's wheelchair; and

(iv) have a restroom usable by an individual who uses a wheelchair,

only to the extent provided in paragraph (3).

(C) SPECIAL RULE FOR SINGLE-LEVEL DINING CARS FOR INDIVIDUALS WHO USE WHEELCHAIRS.--Single-level dining cars shall not be required to--

(i) be able to be entered from the station platform by an individual who uses a wheelchair;  or

(ii) have a restroom usable by an individual who uses a wheelchair if no restroom is provided in such car for any passenger.

**\*348** (D) SPECIAL RULE FOR BI-LEVEL DINING CARS FOR INDIVIDUALS WHO USE WHEELCHAIRS.--Bi-level dining cars shall not be required to--

(i) be able to be entered by an individual who uses a wheelchair;

(ii) have space to park and secure a wheelchair;

(iii) have a seat to which a passenger in a wheelchair can transfer, or a space to fold and store such passenger's wheelchair; or

(iv) have a restroom usable by an individual who uses a wheelchair.

(3) ACCESSIBILITY OF SINGLE-LEVEL COACHES.--

(A) GENERAL RULE.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person who provides intercity rail transportation to fail to have on each train which includes one or more single-level rail passenger coaches--

(i) a number of spaces--

(I) to park and secure wheelchairs (to accommodate individuals who wish to remain in their wheelchairs) equal to not less than one-half of the number of single-level rail passenger coaches in such train; and

(II) to fold and store wheelchairs (to accommodate individuals who wish to transfer to coach seats) equal to not less than one-half of the number of single-level rail passenger coaches in such train,

as soon as practicable, but in no event later than 5 years after the date of enactment of this Act;  and

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(B) whose operations will affect commerce.

Such term shall not include railroad locomotives, railroad freight cars, railroad cabooses, railroad cars described in section 242 or covered under this title, railroad rights-of-way, or facilities that are covered or expressly exempted from coverage under the Fair Housing Act of 1968 (42 U.S.C. 3601 et seq.).

(3) DEMAND RESPONSIVE SYSTEM.--The term "demand responsive system" means any system of providing transportation of individuals by a vehicle, other than a system which is a fixed route system.

**\*354** (4) FIXED ROUTE SYSTEM.--The term "fixed route system" means a system of providing transportation of individuals (other than by aircraft) on which a vehicle is operated along a prescribed route according to a fixed schedule.

(5) OVER-THE-ROAD BUS.--The term "over-the-road bus" means a bus characterized by an elevated passenger deck located over a baggage compartment.

(6) PRIVATE ENTITY.--The term "private entity" means any entity other than a public entity (as defined in section 201(1)).

(7) PUBLIC ACCOMMODATION.--The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce--

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

(8) RAIL AND RAILROAD.--The terms "rail" and "railroad" have the meaning given the term "railroad" in section 202(e) of the Federal Railroad Safety Act of 1970 (45 U.S.C. 431(e)).

(9) READILY ACHIEVABLE.--The term "readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include--

(A) the nature and cost of the action needed under this Act;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the *355 impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

(10) SPECIFIED PUBLIC TRANSPORTATION.--The term "specified public transportation" means transportation by bus, rail, or any other conveyance (other than by aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis.

(11) VEHICLE.--The term "vehicle" does not include a rail passenger car, railroad locomotive, railroad freight car, railroad caboose, or a railroad car described in section 242 or covered under this title.

<< 42 USCA § 12182 >>

SEC. 302. PROHIBITION OF DISCRIMINATION BY PUBLIC ACCOMMODATIONS.

(a) GENERAL RULE.--No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

(b) CONSTRUCTION.--

(1) GENERAL PROHIBITION.--

(A) ACTIVITIES.--

(i) DENIAL OF PARTICIPATION.--It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

(ii) PARTICIPATION IN UNEQUAL BENEFIT.--It shall be discriminatory to afford an individual or class of

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933                                                                                      Page 32

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

(iii) SEPARATE BENEFIT.--It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, *356 advantage, or accommodation, or other opportunity that is as effective as that provided to others.

(iv) INDIVIDUAL OR CLASS OF INDIVIDUALS.--For purposes of clauses (i) through (iii) of this subparagraph, the term "individual or class of individuals" refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing or other arrangement.

(B) INTEGRATED SETTINGS.--Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual.

(C) OPPORTUNITY TO PARTICIPATE.--Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different.

(D) ADMINISTRATIVE METHODS.--An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration--

(i) that have the effect of discriminating on the basis of disability;  or

(ii) that perpetuate the discrimination of others who are subject to common administrative control.

(E) ASSOCIATION.--It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

(2) SPECIFIC PROHIBITIONS.--

(A) DISCRIMINATION.--For purposes of subsection (a), discrimination includes--

(i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

(iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded,

Copr. © West 2007 No Claim to Orig. Govt. Works

http://web2.westlaw.com/print/printstream.aspx?vr=2.0&rs=WLW7.11&prft=HTMLE&f...    11/29/2007

PL 101-336, 1990 S 933                                                                                                    Page 25

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(ii) a number of spaces--

(I) to park and secure wheelchairs (to accommodate individuals who wish to remain in their wheelchairs) equal to not less than the total number of single-level rail passenger coaches in such train; and

(II) to fold and store wheelchairs (to accommodate individuals who wish to transfer to coach seats) equal to not less than the total number of single-level rail passenger coaches in such train,

as soon as practicable, but in no event later than 10 years after the date of enactment of this Act.

(B) LOCATION.--Spaces required by subparagraph (A) shall be located in single-level rail passenger coaches or food service cars.

(C) LIMITATION.--Of the number of spaces required on a train by subparagraph (A), not more than two spaces to park and secure wheelchairs nor more than two spaces to fold and store wheelchairs shall be located in any one coach or food service car.

(D) OTHER ACCESSIBILITY FEATURES.--Single-level rail passenger coaches and food service cars on which the spaces required by subparagraph (A) are located shall have a restroom usable by an individual who uses a wheelchair and shall be able to be entered from the station platform by an individual who uses a wheelchair.

(4) FOOD SERVICE.--

*349 (A) SINGLE-LEVEL DINING CARS.--On any train in which a single-level dining car is used to provide food service--

(i) if such single-level dining car was purchased after the date of enactment of this Act, table service in such car shall be provided to a passenger who uses a wheelchair if--

(I) the car adjacent to the end of the dining car through which a wheelchair may enter is itself accessible to a wheelchair;

(II) such passenger can exit to the platform from the car such passenger occupies, move down the platform, and enter the adjacent accessible car described in subclause (I) without the necessity of the train being moved within the station; and

(III) space to park and secure a wheelchair is available in the dining car at the time such passenger wishes to eat (if such passenger wishes to remain in a wheelchair), or space to store and fold a wheelchair is available in the dining car at the time such passenger wishes to eat (if such passenger wishes to transfer to a dining car seat); and

(ii) appropriate auxiliary aids and services, including a hard surface on which to eat, shall be provided to ensure that other equivalent food service is available to individuals with disabilities, including individuals who use wheelchairs, and to passengers traveling with such individuals.

Unless not practicable, a person providing intercity rail transportation shall place an accessible car adjacent to the end of a dining car described in clause (i) through which an individual who uses a wheelchair may enter.

(B) BI-LEVEL DINING CARS.--On any train in which a bi-level dining car is used to provide food service--

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(i) if such train includes a bi-level lounge car purchased after the date of enactment of this Act, table service in such lounge car shall be provided to individuals who use wheelchairs and to other passengers; and

(ii) appropriate auxiliary aids and services, including a hard surface on which to eat, shall be provided to ensure that other equivalent food service is available to individuals with disabilities, including individuals who use wheelchairs, and to passengers traveling with such individuals.

(b) COMMUTER RAIL TRANSPORTATION.--

(1) ONE CAR PER TRAIN RULE.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person who provides commuter rail transportation to fail to have at least one passenger car per train that is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in accordance with regulations issued under section 244, as soon as practicable, but in no event later than 5 years after the date of enactment of this Act.

(2) NEW COMMUTER RAIL CARS.--

(A) GENERAL RULE.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person to *350 purchase or lease any new rail passenger cars for use in commuter rail transportation, and for which a solicitation is made later than 30 days after the effective date of this section, unless all such rail cars are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, as prescribed by the Secretary of Transportation in regulations issued under section 244.

(B) ACCESSIBILITY.--For purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), a requirement that a rail passenger car used in commuter rail transportation be accessible to or readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, shall not be construed to require--

(i) a restroom usable by an individual who uses a wheelchair if no restroom is provided in such car for any passenger;

(ii) space to fold and store a wheelchair; or

(iii) a seat to which a passenger who uses a wheelchair can transfer.

(c) USED RAIL CARS.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person to purchase or lease a used rail passenger car for use in intercity or commuter rail transportation, unless such person makes demonstrated good faith efforts to purchase or lease a used rail car that is readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, as prescribed by the Secretary of Transportation in regulations issued under section 244.

(d) REMANUFACTURED RAIL CARS.--

(1) REMANUFACTURING.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person to remanufacture a rail passenger car for use in intercity or commuter rail transportation so as to extend its usable life for 10 years or more, unless the rail car, to the maximum extent feasible, is made readily accessible to and usable by individuals with disabilities,

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

including individuals who use wheelchairs, as prescribed by the Secretary of Transportation in regulations issued under section 244.

(2) PURCHASE OR LEASE.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person to purchase or lease a remanufactured rail passenger car for use in intercity or commuter rail transportation unless such car was remanufactured in accordance with paragraph (1).

(e) STATIONS.--

(1) NEW STATIONS.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a person to build a new station for use in intercity or commuter rail transportation that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, as prescribed by the Secretary of Transportation in regulations issued under section 244.

(2) EXISTING STATIONS.--

*351 (A) FAILURE TO MAKE READILY ACCESSIBLE.--

(i) GENERAL RULE.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for a responsible person to fail to make existing stations in the intercity rail transportation system, and existing key stations in commuter rail transportation systems, readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, as prescribed by the Secretary of Transportation in regulations issued under section 244.

(ii) PERIOD FOR COMPLIANCE.--

(I) INTERCITY RAIL.--All stations in the intercity rail transportation system shall be made readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, as soon as practicable, but in no event later than 20 years after the date of enactment of this Act.

(II) COMMUTER RAIL.--Key stations in commuter rail transportation systems shall be made readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, as soon as practicable but in no event later than 3 years after the date of enactment of this Act, except that the time limit may be extended by the Secretary of Transportation up to 20 years after the date of enactment of this Act in a case where the raising of the entire passenger platform is the only means available of attaining accessibility or where other extraordinarily expensive structural changes are necessary to attain accessibility.

(iii) DESIGNATION OF KEY STATIONS.--Each commuter authority shall designate the key stations in its commuter rail transportation system, in consultation with individuals with disabilities and organizations representing such individuals, taking into consideration such factors as high ridership and whether such station serves as a transfer or feeder station. Before the final designation of key stations under this clause, a commuter authority shall hold a public hearing.

(iv) PLANS AND MILESTONES.--The Secretary of Transportation shall require the appropriate person to develop a plan for carrying out this subparagraph that reflects consultation with individuals with disabilities affected by such plan and that establishes milestones for achievement of the requirements of this subparagraph.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(B) REQUIREMENT WHEN MAKING ALTERATIONS.--

(i) GENERAL RULE.--It shall be considered discrimination, for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), with respect to alterations of an existing station or part thereof in the intercity or commuter rail transportation systems that affect or could affect the usability of the station or part thereof, for the responsible person, owner, or person in control of the station to fail to make the alterations in such a manner that, to the **\*352** maximum extent feasible, the altered portions of the station are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon completion of such alterations.

(ii) ALTERATIONS TO A PRIMARY FUNCTION AREA.--It shall be considered discrimination, for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), with respect to alterations that affect or could affect the usability of or access to an area of the station containing a primary function, for the responsible person, owner, or person in control of the station to fail to make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area, and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon completion of such alterations, where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and scope (as determined under criteria established by the Attorney General).

(C) REQUIRED COOPERATION.--It shall be considered discrimination for purposes of section 202 of this Act and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for an owner, or person in control, of a station governed by subparagraph (A) or (B) to fail to provide reasonable cooperation to a responsible person with respect to such station in that responsible person's efforts to comply with such subparagraph. An owner, or person in control, of a station shall be liable to a responsible person for any failure to provide reasonable cooperation as required by this subparagraph. Failure to receive reasonable cooperation required by this subparagraph shall not be a defense to a claim of discrimination under this Act.

<< 42 USCA § 12163 >>

SEC. 243. CONFORMANCE OF ACCESSIBILITY STANDARDS.

Accessibility standards included in regulations issued under this part shall be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board under section 504(a) of this Act.

<< 42 USCA § 12164 >>

SEC. 244. REGULATIONS.

Not later than 1 year after the date of enactment of this Act, the Secretary of Transportation shall issue regulations, in an accessible format, necessary for carrying out this part.

<< 42 USCA § 12165 >>

SEC. 245. INTERIM ACCESSIBILITY REQUIREMENTS.

(a) STATIONS.--If final regulations have not been issued pursuant to section 244, for new construction or alterations for which a valid and appropriate State or local building permit is obtained prior to the issuance of final

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

regulations under such section, and for which the construction or alteration authorized by such permit begins within one year of the receipt of such permit and is completed under the terms of such permit, compliance with the Uniform Federal Accessibility Standards in effect at the time the building permit is *353 issued shall suffice to satisfy the requirement that stations be readily accessible to and usable by persons with disabilities as required under section 242(e), except that, if such final regulations have not been issued one year after the Architectural and Transportation Barriers Compliance Board has issued the supplemental minimum guidelines required under section 504(a) of this Act, compliance with such supplemental minimum guidelines shall be necessary to satisfy the requirement that stations be readily accessible to and usable by persons with disabilities prior to issuance of the final regulations.

(b) RAIL PASSENGER CARS.--If final regulations have not been issued pursuant to section 244, a person shall be considered to have complied with the requirements of section 242(a) through (d) that a rail passenger car be readily accessible to and usable by individuals with disabilities, if the design for such car complies with the laws and regulations (including the Minimum Guidelines and Requirements for Accessible Design and such supplemental minimum guidelines as are issued under section 504(a) of this Act) governing accessibility of such cars, to the extent that such laws and regulations are not inconsistent with this part and are in effect at the time such design is substantially completed.

SEC. 246. EFFECTIVE DATE.

<< 42 USCA §§ 12161 NOTE, 12162 nt, 12163 nt, 12164 nt, 12165 nt >>

(a) GENERAL RULE.--Except as provided in subsection (b), this part shall become effective 18 months after the date of enactment of this Act.

<< 42 USCA § 12161 NOTE >>

(b) EXCEPTION.--Sections 242 and 244 shall become effective on the date of enactment of this Act.

TITLE III--PUBLIC ACCOMMODATIONS AND SERVICES OPERATED BY PRIVATE ENTITIES

<< 42 USCA § 12181 >>

SEC. 301. DEFINITIONS.

As used in this title:

(1) COMMERCE.--The term "commerce" means travel, trade, traffic, commerce, transportation, or communication--

   (A) among the several States;

   (B) between any foreign country or any territory or possession and any State; or

   (C) between points in the same State but through another State or foreign country.

(2) COMMERCIAL FACILITIES.--The term "commercial facilities" means facilities--

   (A) that are intended for nonresidential use; and

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally *357 alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

(iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

(B) FIXED ROUTE SYSTEM.--

(i) ACCESSIBILITY.--It shall be considered discrimination for a private entity which operates a fixed route system and which is not subject to section 304 to purchase or lease a vehicle with a seating capacity in excess of 16 passengers (including the driver) for use on such system, for which a solicitation is made after the 30th day following the effective date of this subparagraph, that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

(ii) EQUIVALENT SERVICE.--If a private entity which operates a fixed route system and which is not subject to section 304 purchases or leases a vehicle with a seating capacity of 16 passengers or less (including the driver) for use on such system after the effective date of this subparagraph that is not readily accessible to or usable by individuals with disabilities, it shall be considered discrimination for such entity to fail to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities.

(C) DEMAND RESPONSIVE SYSTEM.--For purposes of subsection (a), discrimination includes--

(i) a failure of a private entity which operates a demand responsive system and which is not subject to section 304 to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities; and

(ii) the purchase or lease by such entity for use on such system of a vehicle with a seating capacity in excess of 16 passengers (including the driver), for which solicitations are made after the 30th day following the effective date of this subparagraph, that is not readily *358 accessible to and usable by individuals with disabilities (including individuals who use wheelchairs) unless such entity can demonstrate that such system, when viewed in its entirety, provides a level of service to individuals with disabilities equivalent to that provided to individuals without disabilities.

(D) OVER-THE-ROAD BUSES.--

(i) LIMITATION ON APPLICABILITY.--Subparagraphs (B) and (C) do not apply to over-the-road buses.

(ii) ACCESSIBILITY REQUIREMENTS.--For purposes of subsection (a), discrimination includes (I) the purchase or lease of an over-the-road bus which does not comply with the regulations issued under section

Copr. © West 2007 No Claim to Orig. Govt. Works

http://web2.westlaw.com/print/printstream.aspx?vr=2.0&rs=WLW7.11&prft=HTML E&f...    11/29/2007

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

306(a)(2) by a private entity which provides transportation of individuals and which is not primarily engaged in the business of transporting people, and (II) any other failure of such entity to comply with such regulations.

(3) SPECIFIC CONSTRUCTION.--Nothing in this title shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.

<< 42 USCA § 12183 >>

SEC. 303. NEW CONSTRUCTION AND ALTERATIONS IN PUBLIC ACCOMMODATIONS AND COMMERCIAL FACILITIES.

(a) APPLICATION OF TERM.--Except as provided in subsection (b), as applied to public accommodations and commercial facilities, discrimination for purposes of section 302(a) includes--

(1) a failure to design and construct facilities for first occupancy later than 30 months after the date of enactment of this Act that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this title; and

(2) with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. Where the entity is undertaking an alteration that affects or could affect usability of or access to an area of the facility containing a primary function, the entity shall also make the alterations in such a manner that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities where such alterations to the path of travel or the bathrooms, telephones, and drinking fountains serving the altered area are not disproportionate to the overall alterations in terms of cost and *359 scope (as determined under criteria established by the Attorney General).

(b) ELEVATOR.--Subsection (a) shall not be construed to require the installation of an elevator for facilities that are less than three stories or have less than 3,000 square feet per story unless the building is a shopping center, a shopping mall, or the professional office of a health care provider or unless the Attorney General determines that a particular category of such facilities requires the installation of elevators based on the usage of such facilities.

<< 42 USCA § 12184 >>

SEC. 304. PROHIBITION OF DISCRIMINATION IN SPECIFIED PUBLIC TRANSPORTATION SERVICES PROVIDED BY PRIVATE ENTITIES.

(a) GENERAL RULE.--No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.

(b) CONSTRUCTION.---For purposes of subsection (a), discrimination includes--

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(1) the imposition or application by a entity described in subsection (a) of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered;

(2) the failure of such entity to--

(A) make reasonable modifications consistent with those required under section 302(b)(2)(A)(ii);

(B) provide auxiliary aids and services consistent with the requirements of section 302(b)(2)(A)(iii);  and

(C) remove barriers consistent with the requirements of section 302(b)(2)(A) and with the requirements of section 303(a)(2);

(3) the purchase or lease by such entity of a new vehicle (other than an automobile, a van with a seating capacity of less than 8 passengers, including the driver, or an over-the-road bus) which is to be used to provide specified public transportation and for which a solicitation is made after the 30th day following **\*360** the effective date of this section, that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs; except that the new vehicle need not be readily accessible to and usable by such individuals if the new vehicle is to be used solely in a demand responsive system and if the entity can demonstrate that such system, when viewed in its entirety, provides a level of service to such individuals equivalent to the level of service provided to the general public;

(4)(A) the purchase or lease by such entity of an over-the-road bus which does not comply with the regulations issued under section 306(a)(2); and

(B) any other failure of such entity to comply with such regulations; and

(5) the purchase or lease by such entity of a new van with a seating capacity of less than 8 passengers, including the driver, which is to be used to provide specified public transportation and for which a solicitation is made after the 30th day following the effective date of this section that is not readily accessible to or usable by individuals with disabilities, including individuals who use wheelchairs; except that the new van need not be readily accessible to and usable by such individuals if the entity can demonstrate that the system for which the van is being purchased or leased, when viewed in its entirety, provides a level of service to such individuals equivalent to the level of service provided to the general public;

(6) the purchase or lease by such entity of a new rail passenger car that is to be used to provide specified public transportation, and for which a solicitation is made later than 30 days after the effective date of this paragraph, that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs; and

(7) the remanufacture by such entity of a rail passenger car that is to be used to provide specified public transportation so as to extend its usable life for 10 years or more, or the purchase or lease by such entity of such a rail car, unless the rail car, to the maximum extent feasible, is made readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

(c) HISTORICAL OR ANTIQUATED CARS.--

(1) EXCEPTION.--To the extent that compliance with subsection (b)(2)(C) or (b)(7) would significantly alter the

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

historic or antiquated character of a historical or antiquated rail passenger car, or a rail station served exclusively by such cars, or would result in violation of any rule, regulation, standard, or order issued by the Secretary of Transportation under the Federal Railroad Safety Act of 1970, such compliance shall not be required.

(2) DEFINITION.--As used in this subsection, the term "historical or antiquated rail passenger car" means a rail passenger car--

(A) which is not less than 30 years old at the time of its use for transporting individuals;

(B) the manufacturer of which is no longer in the business of manufacturing rail passenger cars; and

(C) which--

(i) has a consequential association with events or persons significant to the past; or

(ii) embodies, or is being restored to embody, the distinctive characteristics of a type of rail passenger car used in the past, or to represent a time period which has passed.

<< 42 USCA § 12185 >>

SEC. 305. STUDY.

(a) PURPOSES.--The Office of Technology Assessment shall undertake a study to determine--

(1) the access needs of individuals with disabilities to over-the-road buses and over-the-road bus service; and

(2) the most cost-effective methods for providing access to over-the-road buses and over-the-road bus service to individuals with disabilities, particularly individuals who use wheelchairs, through all forms of boarding options.

(b) CONTENTS.--The study shall include, at a minimum, an analysis of the following:

*361 (1) The anticipated demand by individuals with disabilities for accessible over-the-road buses and over-the-road bus service.

(2) The degree to which such buses and service, including any service required under sections 304(b)(4) and 306(a)(2), are readily accessible to and usable by individuals with disabilities.

(3) The effectiveness of various methods of providing accessibility to such buses and service to individuals with disabilities.

(4) The cost of providing accessible over-the-road buses and bus service to individuals with disabilities, including consideration of recent technological and cost saving developments in equipment and devices.

(5) Possible design changes in over-the-road buses that could enhance accessibility, including the installation of accessible restrooms which do not result in a loss of seating capacity.

(6) The impact of accessibility requirements on the continuation of over-the-road bus service, with particular consideration of the impact of such requirements on such service to rural communities.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(c) ADVISORY COMMITTEE.--In conducting the study required by subsection (a), the Office of Technology Assessment shall establish an advisory committee, which shall consist of--

(1) members selected from among private operators and manufacturers of over-the-road buses;

(2) members selected from among individuals with disabilities, particularly individuals who use wheelchairs, who are potential riders of such buses; and

(3) members selected for their technical expertise on issues included in the study, including manufacturers of boarding assistance equipment and devices.

The number of members selected under each of paragraphs (1) and (2) shall be equal, and the total number of members selected under paragraphs (1) and (2) shall exceed the number of members selected under paragraph (3).

(d) DEADLINE.--The study required by subsection (a), along with recommendations by the Office of Technology Assessment, including any policy options for legislative action, shall be submitted to the President and Congress within 36 months after the date of the enactment of this Act. If the President determines that compliance with the regulations issued pursuant to section 306(a)(2)(B) on or before the applicable deadlines specified in section 306(a)(2)(B) will result in a significant reduction in intercity over-the-road bus service, the President shall extend each such deadline by 1 year.

(e) REVIEW.--In developing the study required by subsection (a), the Office of Technology Assessment shall provide a preliminary draft of such study to the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792). The Board shall have an opportunity to comment on such draft study, and any such comments by the Board made in writing within 120 days after the Board's receipt of the draft study shall be incorporated as part of the final study required to be submitted under subsection (d).

<< 42 USCA § 12186 >>

SEC. 306. REGULATIONS.

(a) TRANSPORTATION PROVISIONS.--

(1) GENERAL RULE.--Not later than 1 year after the date of the enactment of this Act, the Secretary of Transportation shall issue regulations in an accessible format to carry out sections *362 302(b)(2)(B) and (C) and to carry out section 304 (other than subsection (b)(4)).

(2) SPECIAL RULES FOR PROVIDING ACCESS TO OVER-THE-ROAD BUSES.--

(A) INTERIM REQUIREMENTS.--

(i) ISSUANCE.--Not later than 1 year after the date of the enactment of this Act, the Secretary of Transportation shall issue regulations in an accessible format to carry out sections 304(b)(4) and 302(b)(2)(D)(ii) that require each private entity which uses an over-the-road bus to provide transportation of individuals to provide accessibility to such bus; except that such regulations shall not require any structural changes in over-the-road buses in order to provide access to individuals who use wheelchairs during the effective period of such regulations and shall not require the purchase of boarding assistance devices to provide access to such individuals.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(ii) EFFECTIVE PERIOD.--The regulations issued pursuant to this subparagraph shall be effective until the effective date of the regulations issued under subparagraph (B).

(B) FINAL REQUIREMENT.--

(i) REVIEW OF STUDY AND INTERIM REQUIREMENTS.--The Secretary shall review the study submitted under section 305 and the regulations issued pursuant to subparagraph (A).

(ii) ISSUANCE.--Not later than 1 year after the date of the submission of the study under section 305, the Secretary shall issue in an accessible format new regulations to carry out sections 304(b)(4) and 302(b)(2)(D)(ii) that require, taking into account the purposes of the study under section 305 and any recommendations resulting from such study, each private entity which uses an over-the-road bus to provide transportation to individuals to provide accessibility to such bus to individuals with disabilities, including individuals who use wheelchairs.

(iii) EFFECTIVE PERIOD.--Subject to section 305(d), the regulations issued pursuant to this subparagraph shall take effect--

(I) with respect to small providers of transportation (as defined by the Secretary), 7 years after the date of the enactment of this Act; and

(II) with respect to other providers of transportation, 6 years after such date of enactment.

(C) LIMITATION ON REQUIRING INSTALLATION OF ACCESSIBLE RESTROOMS.--The regulations issued pursuant to this paragraph shall not require the installation of accessible restrooms in over-the-road buses if such installation would result in a loss of seating capacity.

(3) STANDARDS.--The regulations issued pursuant to this subsection shall include standards applicable to facilities and vehicles covered by sections 302(b)(2) and 304.

(b) OTHER PROVISIONS.--Not later than 1 year after the date of the enactment of this Act, the Attorney General shall issue regulations in an accessible format to carry out the provisions of this title not *363 referred to in subsection (a) that include standards applicable to facilities and vehicles covered under section 302.

(c) CONSISTENCY WITH ATBCB GUIDELINES.--Standards included in regulations issued under subsections (a) and (b) shall be consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board in accordance with section 504 of this Act.

(d) INTERIM ACCESSIBILITY STANDARDS.--

(1) FACILITIES.--If final regulations have not been issued pursuant to this section, for new construction or alterations for which a valid and appropriate State or local building permit is obtained prior to the issuance of final regulations under this section, and for which the construction or alteration authorized by such permit begins within one year of the receipt of such permit and is completed under the terms of such permit, compliance with the Uniform Federal Accessibility Standards in effect at the time the building permit is issued shall suffice to satisfy the requirement that facilities be readily accessible to an usable by persons with disabilities as required under section 303, except that, if such final regulations have not been issued one year after the Architectural and Transportation Barriers Compliance Board has issued the supplemental minimum guidelines required under section 504(a) of this Act, compliance with such supplemental minimum guidelines shall be necessary to satisfy the requirement that facilities be readily accessible to and usable by persons with disabilities prior to issuance of the

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

final regulations.

(2) VEHICLES AND RAIL PASSENGER CARS.--If final regulations have not been issued pursuant to this section, a private entity shall be considered to have complied with the requirements of this title, if any, that a vehicle or rail passenger car be readily accessible to and usable by individuals with disabilities, if the design for such vehicle or car complies with the laws and regulations (including the Minimum Guidelines and Requirements for Accessible Design and such supplemental minimum guidelines as are issued under section 504(a) of this Act) governing accessibility of such vehicles or cars, to the extent that such laws and regulations are not inconsistent with this title and are in effect at the time such design is substantially completed.

<< 42 USCA § 12187 >>

SEC. 307. EXEMPTIONS FOR PRIVATE CLUBS AND RELIGIOUS ORGANIZATIONS.

The provisions of this title shall not apply to private clubs or establishments exempted from coverage under title II of the Civil Rights Act of 1964 (42 U.S.C. 2000-a(e)) or to religious organizations or entities controlled by religious organizations, including places of worship.

<< 42 USCA § 12188 >>

SEC. 308. ENFORCEMENT.

(a) IN GENERAL.--

(1) AVAILABILITY OF REMEDIES AND PROCEDURES.--The remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000a-3(a)) are the remedies and procedures this title provides to any person who is being subjected to discrimination on the basis of disability in violation of this title or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of *364 section 303. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions.

(2) INJUNCTIVE RELIEF.--In the case of violations of sections 302(b)(2)(A)(iv) and section 303(a), injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

(b) ENFORCEMENT BY THE ATTORNEY GENERAL.--

(1) DENIAL OF RIGHTS.--

(A) DUTY TO INVESTIGATE.--

(i) IN GENERAL.--The Attorney General shall investigate alleged violations of this title, and shall undertake periodic reviews of compliance of covered entities under this title.

(ii) ATTORNEY GENERAL CERTIFICATION.--On the application of a State or local government, the Attorney General may, in consultation with the Architectural and Transportation Barriers Compliance Board, and

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

after prior notice and a public hearing at which persons, including individuals with disabilities, are provided an opportunity to testify against such certification, certify that a State law or local building code or similar ordinance that establishes accessibility requirements meets or exceeds the minimum requirements of this Act for the accessibility and usability of covered facilities under this title. At any enforcement proceeding under this section, such certification by the Attorney General shall be rebuttable evidence that such State law or local ordinance does meet or exceed the minimum requirements of this Act.

(B) POTENTIAL VIOLATION.--If the Attorney General has reasonable cause to believe that--

(i) any person or group of persons is engaged in a pattern or practice of discrimination under this title; or

(ii) any person or group of persons has been discriminated against under this title and such discrimination raises an issue of general public importance,

the Attorney General may commence a civil action in any appropriate United States district court.

(2) AUTHORITY OF COURT.--In a civil action under paragraph (1)(B), the court--

(A) may grant any equitable relief that such court considers to be appropriate, including, to the extent required by this title--

(i) granting temporary, preliminary, or permanent relief;

(ii) providing an auxiliary aid or service, modification of policy, practice, or procedure, or alternative method; and

(iii) making facilities readily accessible to and usable by individuals with disabilities;

*365 (B) may award such other relief as the court considers to be appropriate, including monetary damages to persons aggrieved when requested by the Attorney General; and

(C) may, to vindicate the public interest, assess a civil penalty against the entity in an amount--

(i) not exceeding $50,000 for a first violation; and

(ii) not exceeding $100,000 for any subsequent violation.

(3) SINGLE VIOLATION.--For purposes of paragraph (2)(C), in determining whether a first or subsequent violation has occurred, a determination in a single action, by judgment or settlement, that the covered entity has engaged in more than one discriminatory act shall be counted as a single violation.

(4) PUNITIVE DAMAGES.--For purposes of subsection (b)(2)(B), the term "monetary damages" and "such other relief" does not include punitive damages.

(5) JUDICIAL CONSIDERATION.--In a civil action under paragraph (1)(B), the court, when considering what amount of civil penalty, if any, is appropriate, shall give consideration to any good faith effort or attempt to comply with this Act by the entity. In evaluating good faith, the court shall consider, among other factors it deems relevant, whether the entity could have reasonably anticipated the need for an appropriate type of auxiliary aid needed to accommodate the unique needs of a particular individual with a disability.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

<< 42 USCA § 12189 >>

### SEC. 309. EXAMINATIONS AND COURSES.

Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

### SEC. 310. EFFECTIVE DATE.

<< 42 USCA §§ 12181 NOTE, 12182 nt, 12183 nt, 12184 nt, 12185 nt, 12186 nt, 12187 nt, 12188 nt, 12189 nt >>

(a) GENERAL RULE.--Except as provided in subsections (b) and (c), this title shall become effective 18 months after the date of the enactment of this Act.

<< 42 USCA § 12181 NOTE >>

(b) CIVIL ACTIONS.--Except for any civil action brought for a violation of section 303, no civil action shall be brought for any act or omission described in section 302 which occurs--

(1) during the first 6 months after the effective date, against businesses that employ 25 or fewer employees and have gross receipts of $1,000,000 or less; and

(2) during the first year after the effective date, against businesses that employ 10 or fewer employees and have gross receipts of $500,000 or less.

(c) EXCEPTION.--Sections 302(a) for purposes of section 302(b)(2)(B) and (C) only, 304(a) for purposes of section 304(b)(3) only, 304(b)(3), 305, and 306 shall take effect on the date of the enactment of this Act.

### *366 TITLE IV--TELECOMMUNICATIONS

<< 47 USCA § 225 >>

### SEC. 401. TELECOMMUNICATIONS RELAY SERVICES FOR HEARING-IMPAIRED AND SPEECH-IMPAIRED INDIVIDUALS.

(a) TELECOMMUNICATIONS.--Title II of the Communications Act of 1934 (47 U.S.C. 201 et seq.) is amended by adding at the end thereof the following new section:

"SEC. 225. TELECOMMUNICATIONS SERVICES FOR HEARING-IMPAIRED AND SPEECH-IMPAIRED INDIVIDUALS.

"(a) DEFINITIONS.--As used in this section--

"(1) COMMON CARRIER OR CARRIER.--The term 'common carrier' or 'carrier' includes any common carrier engaged in interstate communication by wire or radio as defined in section 3(h) and any common carrier engaged in intrastate communication by wire or radio, notwithstanding sections 2(b) and 221(b).

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

"(2) TDD.--The term 'TDD' means a Telecommunications Device for the Deaf, which is a machine that employs graphic communication in the transmission of coded signals through a wire or radio communication system.

"(3) TELECOMMUNICATIONS RELAY SERVICES.--The term 'telecommunications relay services' means telephone transmission services that provide the ability for an individual who has a hearing impairment or speech impairment to engage in communication by wire or radio with a hearing individual in a manner that is functionally equivalent to the ability of an individual who does not have a hearing impairment or speech impairment to communicate using voice communication services by wire or radio. Such term includes services that enable two-way communication between an individual who uses a TDD or other nonvoice terminal device and an individual who does not use such a device.

"(b) AVAILABILITY OF TELECOMMUNICATIONS RELAY SERVICES.--

"(1) IN GENERAL.--In order to carry out the purposes established under section 1, to make available to all individuals in the United States a rapid, efficient nationwide communication service, and to increase the utility of the telephone system of the Nation, the Commission shall ensure that interstate and intrastate telecommunications relay services are available, to the extent possible and in the most efficient manner, to hearing-impaired and speech-impaired individuals in the United States.

"(2) USE OF GENERAL AUTHORITY AND REMEDIES.--For the purposes of administering and enforcing the provisions of this section and the regulations prescribed thereunder, the Commission shall have the same authority, power, and functions with respect to common carriers engaged in intrastate communication as the Commission has in administering and enforcing the provisions of this title with respect to any common carrier engaged in interstate communication. Any violation of this section by any common carrier engaged in intrastate communication shall be subject to the same remedies, penalties, and procedures as are applicable to a violation of this Act by a common carrier engaged in interstate communication.

"(c) PROVISION OF SERVICES.--Each common carrier providing telephone voice transmission services shall, not later than 3 years after the date of enactment of this section, provide in compliance with the *367 regulations prescribed under this section, throughout the area in which it offers service, telecommunications relay services, individually, through designees, through a competitively selected vendor, or in concert with other carriers. A common carrier shall be considered to be in compliance with such regulations--

"(1) with respect to intrastate telecommunications relay services in any State that does not have a certified program under subsection (f) and with respect to interstate telecommunications relay services, if such common carrier (or other entity through which the carrier is providing such relay services) is in compliance with the Commission's regulations under subsection (d); or

"(2) with respect to intrastate telecommunications relay services in any State that has a certified program under subsection (f) for such State, if such common carrier (or other entity through which the carrier is providing such relay services) is in compliance with the program certified under subsection (f) for such State.

"(d) REGULATIONS.--

"(1) IN GENERAL.--The Commission shall, not later than 1 year after the date of enactment of this section, prescribe regulations to implement this section, including regulations that--

  "(A) establish functional requirements, guidelines, and operations procedures for telecommunications relay services;

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

"(B) establish minimum standards that shall be met in carrying out subsection (c);

"(C) require that telecommunications relay services operate every day for 24 hours per day;

"(D) require that users of telecommunications relay services pay rates no greater than the rates paid for functionally equivalent voice communication services with respect to such factors as the duration of the call, the time of day, and the distance from point of origination to point of termination;

"(E) prohibit relay operators from failing to fulfill the obligations of common carriers by refusing calls or limiting the length of calls that use telecommunications relay services;

"(F) prohibit relay operators from disclosing the content of any relayed conversation and from keeping records of the content of any such conversation beyond the duration of the call;  and

"(G) prohibit relay operators from intentionally altering a relayed conversation.

"(2) TECHNOLOGY.--The Commission shall ensure that regulations prescribed to implement this section encourage, consistent with section 7(a) of this Act, the use of existing technology and do not discourage or impair the development of improved technology.

"(3) JURISDICTIONAL SEPARATION OF COSTS.--

"(A) IN GENERAL.--Consistent with the provisions of section 410 of this Act, the Commission shall prescribe regulations governing the jurisdictional separation of costs for the services provided pursuant to this section.

"(B) RECOVERING COSTS.--Such regulations shall generally provide that costs caused by interstate telecommunications *368 relay services shall be recovered from all subscribers for every interstate service and costs caused by intrastate telecommunications relay services shall be recovered from the intrastate jurisdiction. In a State that has a certified program under subsection (f), a State commission shall permit a common carrier to recover the costs incurred in providing intrastate telecommunications relay services by a method consistent with the requirements of this section.

"(e) ENFORCEMENT.--

"(1) IN GENERAL.--Subject to subsections (f) and (g), the Commission shall enforce this section.

"(2) COMPLAINT.--The Commission shall resolve, by final order, a complaint alleging a violation of this section within 180 days after the date such complaint is filed.

"(f) CERTIFICATION.--

"(1) STATE DOCUMENTATION.--Any State desiring to establish a State program under this section shall submit documentation to the Commission that describes the program of such State for implementing intrastate telecommunications relay services and the procedures and remedies available for enforcing any requirements imposed by the State program.

"(2) REQUIREMENTS FOR CERTIFICATION.--After review of such documentation, the Commission shall certify the State program if the Commission determines that--

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933                                                      Page 44

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

"(A) the program makes available to hearing-impaired and speech-impaired individuals, either directly, through designees, through a competitively selected vendor, or through regulation of intrastate common carriers, intrastate telecommunications relay services in such State in a manner that meets or exceeds the requirements of regulations prescribed by the Commission under subsection (d); and

"(B) the program makes available adequate procedures and remedies for enforcing the requirements of the State program.

"(3) METHOD OF FUNDING.--Except as provided in subsection (d), the Commission shall not refuse to certify a State program based solely on the method such State will implement for funding intrastate telecommunication relay services.

"(4) SUSPENSION OR REVOCATION OF CERTIFICATION.--The Commission may suspend or revoke such certification if, after notice and opportunity for hearing, the Commission determines that such certification is no longer warranted. In a State whose program has been suspended or revoked, the Commission shall take such steps as may be necessary, consistent with this section, to ensure continuity of telecommunications relay services.

"(g) COMPLAINT.--

"(1) REFERRAL OF COMPLAINT.--If a complaint to the Commission alleges a violation of this section with respect to intrastate telecommunications relay services within a State and certification of the program of such State under subsection (f) is in effect, the Commission shall refer such complaint to such State.

"(2) JURISDICTION OF COMMISSION.--After referring a complaint to a State under paragraph (1), the Commission shall exercise jurisdiction over such complaint only if--

"(A) final action under such State program has not been taken on such complaint by such State--

*369 "(i) within 180 days after the complaint is filed with such State; or

"(ii) within a shorter period as prescribed by the regulations of such State; or

"(B) the Commission determines that such State program is no longer qualified for certification under subsection (f).".

(b) CONFORMING AMENDMENTS.--The Communications Act of 1934 (47 U.S.C. 151 et seq.) is amended--

<< 47 USCA § 152 >>

(1) in section 2(b) (47 U.S.C. 152(b)), by striking "section 224" and inserting "sections 224 and 225"; and

<< 47 USCA § 221 >>

(2) in section 221(b) (47 U.S.C. 221(b)), by striking "section 301" and inserting "sections 225 and 301".

<< 47 USCA § 611 >>

SEC. 402. CLOSED-CAPTIONING OF PUBLIC SERVICE ANNOUNCEMENTS.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933                                                    Page 45

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

Section 711 of the Communications Act of 1934 is amended to read as follows:

"SEC. 711. CLOSED-CAPTIONING OF PUBLIC SERVICE ANNOUNCEMENTS.

"Any television public service announcement that is produced or funded in whole or in part by any agency or instrumentality of Federal Government shall include closed captioning of the verbal content of such announcement. A television broadcast station licensee--

"(1) shall not be required to supply closed captioning for any such announcement that fails to include it; and

"(2) shall not be liable for broadcasting any such announcement without transmitting a closed caption unless the licensee intentionally fails to transmit the closed caption that was included with the announcement.".

TITLE V--MISCELLANEOUS PROVISIONS

<< 42 USCA § 12201 >>

SEC. 501. CONSTRUCTION.

(a) IN GENERAL.--Except as otherwise provided in this Act, nothing in this Act shall be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 790 et seq.) or the regulations issued by Federal agencies pursuant to such title.

(b) RELATIONSHIP TO OTHER LAWS.--Nothing in this Act shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this Act. Nothing in this Act shall be construed to preclude the prohibition of, or the imposition of restrictions on, smoking in places of employment covered by title I, in transportation covered by title II or III, or in places of public accommodation covered by title III.

(c) INSURANCE.--Titles I through IV of this Act shall not be construed to prohibit or restrict--

(1) an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or

(2) a person or organization covered by this Act from establishing, sponsoring, observing or administering the terms *370 of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or

(3) a person or organization covered by this Act from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.

Paragraphs (1), (2), and (3) shall not be used as a subterfuge to evade the purposes of title I and III.

(d) ACCOMMODATIONS AND SERVICES.--Nothing in this Act shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit which such individual chooses not to accept.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

<< 42 USCA § 12202 >>

SEC. 502. STATE IMMUNITY.

A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

<< 42 USCA § 12203 >>

SEC. 503. PROHIBITION AGAINST RETALIATION AND COERCION.

(a) RETALIATION.--No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

(b) INTERFERENCE, COERCION, OR INTIMIDATION.--It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

(c) REMEDIES AND PROCEDURES.--The remedies and procedures available under sections 107, 203, and 308 of this Act shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to title I, title II and title III, respectively.

<< 42 USCA § 12204 >>

SEC. 504. REGULATIONS BY THE ARCHITECTURAL AND TRANSPORTATION BARRIERS COMPLIANCE BOARD.

(a) ISSUANCE OF GUIDELINES.--Not later than 9 months after the date of enactment of this Act, the Architectural and Transportation Barriers Compliance Board shall issue minimum guidelines that shall supplement the existing Minimum Guidelines and Requirements for Accessible Design for purposes of titles II and III of this Act.

(b) CONTENTS OF GUIDELINES.--The supplemental guidelines issued under subsection (a) shall establish additional requirements, consistent with this Act, to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities.

(c) QUALIFIED HISTORIC PROPERTIES.--

(1) IN GENERAL.--The supplemental guidelines issued under subsection (a) shall include procedures and requirements for *371 alterations that will threaten or destroy the historic significance of qualified historic buildings and facilities as defined in 4.1.7(1)(a) of the Uniform Federal Accessibility Standards.

(2) SITES ELIGIBLE FOR LISTING IN NATIONAL REGISTER.--With respect to alterations of buildings or

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

facilities that are eligible for listing in the National Register of Historic Places under the National Historic Preservation Act (16 U.S.C. 470 et seq.), the guidelines described in paragraph (1) shall, at a minimum, maintain the procedures and requirements established in 4.1.7(1) and (2) of the Uniform Federal Accessibility Standards.

(3) OTHER SITES.--With respect to alterations of buildings or facilities designated as historic under State or local law, the guidelines described in paragraph (1) shall establish procedures equivalent to those established by 4.1.7(1)(b) and (c) of the Uniform Federal Accessibility Standards, and shall require, at a minimum, compliance with the requirements established in 4.1.7(2) of such standards.

<< 42 USCA § 12205 >>

SEC. 505. ATTORNEY'S FEES.

In any action or administrative proceeding commenced pursuant to this Act, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

<< 42 USCA § 12206 >>

SEC. 506. TECHNICAL ASSISTANCE.

(a) PLAN FOR ASSISTANCE.--

(1) IN GENERAL.--Not later than 180 days after the date of enactment of this Act, the Attorney General, in consultation with the Chair of the Equal Employment Opportunity Commission, the Secretary of Transportation, the Chair of the Architectural and Transportation Barriers Compliance Board, and the Chairman of the Federal Communications Commission, shall develop a plan to assist entities covered under this Act, and other Federal agencies, in understanding the responsibility of such entities and agencies under this Act.

(2) PUBLICATION OF PLAN.--The Attorney General shall publish the plan referred to in paragraph (1) for public comment in accordance with subchapter II of chapter 5 of title 5, United States Code (commonly known as the Administrative Procedure Act).

(b) AGENCY AND PUBLIC ASSISTANCE.--The Attorney General may obtain the assistance of other Federal agencies in carrying out subsection (a), including the National Council on Disability, the President's Committee on Employment of People with Disabilities, the Small Business Administration, and the Department of Commerce.

(c) IMPLEMENTATION.--

(1) RENDERING ASSISTANCE.--Each Federal agency that has responsibility under paragraph (2) for implementing this Act may render technical assistance to individuals and institutions that have rights or duties under the respective title or titles for which such agency has responsibility.

(2) IMPLEMENTATION OF TITLES.--

(A) TITLE I.--The Equal Employment Opportunity Commission and the Attorney General shall implement the *372 plan for assistance developed under subsection (a), for title I.

(B) TITLE II.--

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(i) SUBTITLE A.--The Attorney General shall implement such plan for assistance for subtitle A of title II.

(ii) SUBTITLE B.--The Secretary of Transportation shall implement such plan for assistance for subtitle B of title II.

(C) TITLE III.--The Attorney General, in coordination with the Secretary of Transportation and the Chair of the Architectural Transportation Barriers Compliance Board, shall implement such plan for assistance for title III, except for section 304, the plan for assistance for which shall be implemented by the Secretary of Transportation.

(D) TITLE IV.--The Chairman of the Federal Communications Commission, in coordination with the Attorney General, shall implement such plan for assistance for title IV.

(3) TECHNICAL ASSISTANCE MANUALS.--Each Federal agency that has responsibility under paragraph (2) for implementing this Act shall, as part of its implementation responsibilities, ensure the availability and provision of appropriate technical assistance manuals to individuals or entities with rights or duties under this Act no later than six months after applicable final regulations are published under titles I, II, III, and IV.

(d) GRANTS AND CONTRACTS.--

(1) IN GENERAL.--Each Federal agency that has responsibility under subsection (c)(2) for implementing this Act may make grants or award contracts to effectuate the purposes of this section, subject to the availability of appropriations. Such grants and contracts may be awarded to individuals, institutions not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual (including educational institutions), and associations representing individuals who have rights or duties under this Act. Contracts may be awarded to entities organized for profit, but such entities may not be the recipients or grants described in this paragraph.

(2) DISSEMINATION OF INFORMATION.--Such grants and contracts, among other uses, may be designed to ensure wide dissemination of information about the rights and duties established by this Act and to provide information and technical assistance about techniques for effective compliance with this Act.

(e) FAILURE TO RECEIVE ASSISTANCE.--An employer, public accommodation, or other entity covered under this Act shall not be excused from compliance with the requirements of this Act because of any failure to receive technical assistance under this section, including any failure in the development or dissemination of any technical assistance manual authorized by this section.

<< 42 USCA § 12207 >>

SEC. 507. FEDERAL WILDERNESS AREAS.

(a) STUDY.--The National Council on Disability shall conduct a study and report on the effect that wilderness designations and wilderness land management practices have on the ability of individuals with disabilities to use and enjoy the National Wilderness Preservation System as established under the Wilderness Act (16 U.S.C. 1131 et seq.).

**\*373** (b) SUBMISSION OF REPORT.--Not later than 1 year after the enactment of this Act, the National Council on Disability shall submit the report required under subsection (a) to Congress.

(c) SPECIFIC WILDERNESS ACCESS.--

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(1) IN GENERAL.--Congress reaffirms that nothing in the Wilderness Act is to be construed as prohibiting the use of a wheelchair in a wilderness area by an individual whose disability requires use of a wheelchair, and consistent with the Wilderness Act no agency is required to provide any form of special treatment or accommodation, or to construct any facilities or modify any conditions of lands within a wilderness area in order to facilitate such use.

(2) DEFINITION.--For purposes of paragraph (1), the term "wheelchair" means a device designed solely for use by a mobility-impaired person for locomotion, that is suitable for use in an indoor pedestrian area.

<< 42 USCA § 12208 >>

SEC. 508. TRANSVESTITES.

For the purposes of this Act, the term "disabled" or "disability" shall not apply to an individual solely because that individual is a transvestite.

<< 42 USCA § 12209 >>

SEC. 509. COVERAGE OF CONGRESS AND THE AGENCIES OF THE LEGISLATIVE BRANCH.

(a) COVERAGE OF THE SENATE.--

(1) COMMITMENT TO RULE XLII.--The Senate reaffirms its commitment to Rule XLII of the Standing Rules of the Senate which provides as follows:

"No member, officer, or employee of the Senate shall, with respect to employment by the Senate or any office thereof--

"(a) fail or refuse to hire an individual;

"(b) discharge an individual; or

"(c) otherwise discriminate against an individual with respect to promotion, compensation, or terms, conditions, or privileges of employment

on the basis of such individual's race, color, religion, sex, national origin, age, or state of physical handicap.".

(2) APPLICATION TO SENATE EMPLOYMENT.--The rights and protections provided pursuant to this Act, the Civil Rights Act of 1990 (S. 2104, 101st Congress), the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the Rehabilitation Act of 1973 shall apply with respect to employment by the United States Senate.

(3) INVESTIGATION AND ADJUDICATION OF CLAIMS.--All claims raised by any individual with respect to Senate employment, pursuant to the Acts referred to in paragraph (2), shall be investigated and adjudicated by the Select Committee on Ethics, pursuant to S.Res. 338, 88th Congress, as amended, or such other entity as the Senate may designate.

(4) RIGHTS OF EMPLOYEES.--The Committee on Rules and Administration shall ensure that Senate employees are informed of their rights under the Acts referred to in paragraph (2).

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(5) APPLICABLE REMEDIES.--When assigning remedies to individuals found to have a valid claim under the Acts referred to in paragraph (2), the Select Committee on Ethics, or such other entity as the Senate may designate, should to the extent *374 practicable apply the same remedies applicable to all other employees covered by the Acts referred to in paragraph (2). Such remedies shall apply exclusively.

(6) MATTERS OTHER THAN EMPLOYMENT.--

(A) IN GENERAL.--The rights and protections under this Act shall, subject to subparagraph (B), apply with respect to the conduct of the Senate regarding matters other than employment.

(B) REMEDIES.--The Architect of the Capitol shall establish remedies and procedures to be utilized with respect to the rights and protections provided pursuant to subparagraph (A). Such remedies and procedures shall apply exclusively, after approval in accordance with subparagraph (C).

(C) PROPOSED REMEDIES AND PROCEDURES.--For purposes of subparagraph (B), the Architect of the Capitol shall submit proposed remedies and procedures to the Senate Committee on Rules and Administration. The remedies and procedures shall be effective upon the approval of the Committee on Rules and Administration.

(7) EXERCISE OF RULEMAKING POWER.--Notwithstanding any other provision of law, enforcement and adjudication of the rights and protections referred to in paragraph (2) and (6)(A) shall be within the exclusive jurisdiction of the United States Senate. The provisions of paragraph (1), (3), (4), (5), (6)(B), and (6)(C) are enacted by the Senate as an exercise of the rulemaking power of the Senate, with full recognition of the right of the Senate to change its rules, in the same manner, and to the same extent, as in the case of any other rule of the Senate.

(b) COVERAGE OF THE HOUSE OF REPRESENTATIVES.--

(1) IN GENERAL.--Notwithstanding any other provision of this Act or of law, the purposes of this Act shall, subject to paragraphs (2) and (3), apply in their entirety to the House of Representatives.

(2) EMPLOYMENT IN THE HOUSE.--

(A) APPLICATION.--The rights and protections under this Act shall, subject to subparagraph (B), apply with respect to any employee in an employment position in the House of Representatives and any employing authority of the House of Representatives.

(B) ADMINISTRATION.--

(i) IN GENERAL.--In the administration of this paragraph, the remedies and procedures made applicable pursuant to the resolution described in clause (ii) shall apply exclusively.

(ii) RESOLUTION.--The resolution referred to in clause (i) is House Resolution 15 of the One Hundred First Congress, as agreed to January 3, 1989, or any other provision that continues in effect the provisions of, or is a successor to, the Fair Employment Practices Resolution (House Resolution 558 of the One Hundredth Congress, as agreed to October 4, 1988).

(C) EXERCISE OF RULEMAKING POWER.--The provisions of subparagraph (B) are enacted by the House of Representatives as an exercise of the rulemaking power of the House of Representatives, with full recognition of the right of the House to change its rules, in the same manner, and to the same extent as in the case of any other

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

rule of the House.

**\*375 (3) MATTERS OTHER THAN EMPLOYMENT.--**

(A) IN GENERAL.--The rights and protections under this Act shall, subject to subparagraph (B), apply with respect to the conduct of the House of Representatives regarding matters other than employment.

(B) REMEDIES.--The Architect of the Capitol shall establish remedies and procedures to be utilized with respect to the rights and protections provided pursuant to subparagraph (A). Such remedies and procedures shall apply exclusively, after approval in accordance with subparagraph (C).

(C) APPROVAL.--For purposes of subparagraph (B), the Architect of the Capitol shall submit proposed remedies and procedures to the Speaker of the House of Representatives. The remedies and procedures shall be effective upon the approval of the Speaker, after consultation with the House Office Building Commission.

(c) INSTRUMENTALITIES OF CONGRESS.--

(1) IN GENERAL.--The rights and protections under this Act shall, subject to paragraph (2), apply with respect to the conduct of each instrumentality of the Congress.

(2) ESTABLISHMENT OF REMEDIES AND PROCEDURES BY INSTRUMENTALITIES.--The chief official of each instrumentality of the Congress shall establish remedies and procedures to be utilized with respect to the rights and protections provided pursuant to paragraph (1). Such remedies and procedures shall apply exclusively.

(3) REPORT TO CONGRESS.--The chief official of each instrumentality of the Congress shall, after establishing remedies and procedures for purposes of paragraph (2), submit to the Congress a report describing the remedies and procedures.

(4) DEFINITION OF INSTRUMENTALITIES.--For purposes of this section, instrumentalities of the Congress include the following: the Architect of the Capitol, the Congressional Budget Office, the General Accounting Office, the Government Printing Office, the Library of Congress, the Office of Technology Assessment, and the United States Botanic Garden.

(5) CONSTRUCTION.--Nothing in this section shall alter the enforcement procedures for individuals with disabilities provided in the General Accounting Office Personnel Act of 1980 and regulations promulgated pursuant to that Act.

<< 42 USCA § 12210 >>

SEC. 510. ILLEGAL USE OF DRUGS.

(a) IN GENERAL.--For purposes of this Act, the term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.

(b) RULES OF CONSTRUCTION.--Nothing in subsection (a) shall be construed to exclude as an individual with a disability an individual who--

(1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

(2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or

(3) is erroneously regarded as engaging in such use, but is not engaging in such use;

**\*376** except that it shall not be a violation of this Act for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in paragraph (1) or (2) is no longer engaging in the illegal use of drugs; however, nothing in this section shall be construed to encourage, prohibit, restrict, or authorize the conducting of testing for the illegal use of drugs.

(c) HEALTH AND OTHER SERVICES.--Notwithstanding subsection (a) and section 511(b)(3), an individual shall not be denied health services, or services provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs if the individual is otherwise entitled to such services.

(d) DEFINITION OF ILLEGAL USE OF DRUGS.--

(1) IN GENERAL.--The term "illegal use of drugs" means the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act (21 U.S.C. 812). Such term does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.

(2) DRUGS.--The term "drug" means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act.

<< 42 USCA § 12211 >>

SEC. 511. DEFINITIONS.

(a) HOMOSEXUALITY AND BISEXUALITY.--For purposes of the definition of "disability" in section 3(2), homosexuality and bisexuality are not impairments and as such are not disabilities under this Act.

(b) CERTAIN CONDITIONS.--Under this Act, the term "disability" shall not include--

(1) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders;

(2) compulsive gambling, kleptomania, or pyromania; or

(3) psychoactive substance use disorders resulting from current illegal use of drugs.

<< 29 USCA § 706 >>

SEC. 512. AMENDMENTS TO THE REHABILITATION ACT.

(a) DEFINITION OF HANDICAPPED INDIVIDUAL.--Section 7(8) of the Rehabilitation Act of 1973 (29 U.S.C. 706(8)) is amended by redesignating subparagraph (C) as subparagraph (D), and by inserting after subparagraph (B) the following subparagraph:

"(C)(i) For purposes of title V, the term 'individual with handicaps' does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use.

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

"(ii) Nothing in clause (i) shall be construed to exclude as an individual with handicaps an individual who--

"(I) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;

"(II) is participating in a supervised rehabilitation program and is no longer engaging in such use; or

"(III) is erroneously regarded as engaging in such use, but is not engaging in such use;

**\*377** except that it shall not be a violation of this Act for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in subclause (I) or (II) is no longer engaging in the illegal use of drugs.

"(iii) Notwithstanding clause (i), for purposes of programs and activities providing health services and services provided under titles I, II and III, an individual shall not be excluded from the benefits of such programs or activities on the basis of his or her current illegal use of drugs if he or she is otherwise entitled to such services.

"(iv) For purposes of programs and activities providing educational services, local educational agencies may take disciplinary action pertaining to the use or possession of illegal drugs or alcohol against any handicapped student who currently is engaging in the illegal use of drugs or in the use of alcohol to the same extent that such disciplinary action is taken against nonhandicapped students. Furthermore, the due process procedures at 34 CFR 104.36 shall not apply to such disciplinary actions.

"(v) For purposes of sections 503 and 504 as such sections relate to employment, the term 'individual with handicaps' does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others.".

(b) DEFINITION OF ILLEGAL DRUGS.--Section 7 of the Rehabilitation Act of 1973 (29 U.S.C. 706) is amended by adding at the end the following new paragraph:

"(22)(A) The term 'drug' means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812).

"(B) The term 'illegal use of drugs' means the use of drugs, the possession or distribution of which is unlawful under the Controlled Substances Act. Such term does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.".

(c) CONFORMING AMENDMENTS.--Section 7(8)(B) of the Rehabilitation Act of 1973 (29 U.S.C. 706(8)(B)) is amended--

(1) in the first sentence, by striking "Subject to the second sentence of this subparagraph," and inserting "Subject to subparagraphs (C) and (D),"; and

(2) by striking the second sentence.

<< 42 USCA § 12212 >>

Copr. © West 2007 No Claim to Orig. Govt. Works

PL 101-336, 1990 S 933                                                                                      Page 54

PL 101-336, July 26, 1990, 104 Stat 327
**(Cite as: 104 Stat 327)**

SEC. 513. ALTERNATIVE MEANS OF DISPUTE RESOLUTION.

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, **\*378** and arbitration, is encouraged to resolve disputes arising under this Act.

<< 42 USCA § 12213 >>

SEC. 514. SEVERABILITY.

Should any provision in this Act be found to be unconstitutional by a court of law, such provision shall be severed from the remainder of the Act, and such action shall not affect the enforceability of the remaining provisions of the Act.

Approved July 26, 1990

PL 101-336, 1990 S 933

END OF DOCUMENT

Copr. © West 2007 No Claim to Orig. Govt. Works