1  Scott J. Ferrell, Bar No. 202091
2  Lisa A. Wegner, Bar No. 209917
   CALL, JENSEN & FERRELL
3  A Professional Corporation
   610 Newport Center Drive, Suite 700
4  Newport Beach, CA 92660
   Tel: (949) 717-3000
5  Fax: (949) 717-3100
   sferrell@calljensen.com
6  lwegner@calljensen.com

7
   Attorneys for Defendant Marie Callender's Pie
8  Shops, Inc. d.b.a. Marie Callender's #254

9

10                **UNITED STATES DISTRICT COURT**

11              **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  OUTERBRIDGE ACCESS                    Case No. 07-CV-2129 BTM (AJB)
    ASSOCIATION, SUING ON BEHALF OF
14  DIANE CROSS; and DIANE CROSS, An      **REQUEST FOR JUDICIAL NOTICE**
    Individual,                           **IN SUPPORT OF DEFENDANTS'**
15                                        **MOTION FOR ORDER DECLINING**
                                          **SUPPLEMENTAL JURISDICTION**
16          Plaintiff,
                                          [*Notice of Motion, Memorandum of Points*
17      vs.                               *and Authorities, and Appendix of Foreign*
                                          *Authorities filed concurrently herewith*]
18  MARIE CALLENDER'S PIE SHOPS,
    INC. d.b.a. MARIE CALLENDER'S #254;   Date: March 28, 2008
19  PACIFIC BAGELS, LLC d.b.a.            Time: 11:00 a.m.
    BRUEGGARS BAGELS; COURTYARD           Ctrm: 15
20  HOLDINGS, LP; PSS PARTNERS, LLC;
    AND DOES 1 THROUGH 10, Inclusive,     ***Per Chambers, no oral argument unless***
21                                        ***required by the court.***
22          Defendants.
                                          Complaint Filed: November 7, 2007
23                                        Trial Date: None Set

24

25  _____

26
    / / /
27
    / / /
28

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

TRC01-08:342936_1:1-30-08                          - 1 -                    07-CV-2129 BTM (AJB)
REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION FOR ORDER DECLINING
SUPPLEMENTAL JURISDICTION

1    Defendant Marie Callender's Pie Shops, Inc. d.b.a. Marie Callender's #254
2  hereby requests pursuant to Rule 201 of the Federal Rules of Evidence, that the Court
3  take judicial notice of the following:

4    1.    Attached hereto as Exhibit A is a true and correct copy of Plaintiff's First
5  Amended Complaint, filed with the Court January 15, 2008;

6

7    2.    *Tripple AAA v. Del Taco, Inc., et al.*, Case No. 06cv2199 DMS-WMC.
8  Attached hereto as Exhibit B is a true and correct copy of the Order Granting in Part
9  Motion to Dismiss, dated February 26, 2007.

10

11    **STANDARD FOR JUDICIAL NOTICE**

12    Pursuant to Rule 201(d) of the Federal Rules of Evidence, "the court shall take
13  judicial notice of adjudicative facts if requested by a party and supplied with the
14  necessary information." *Pollstar v. Gigmania Ltd.*, 170 F. Supp. 2d 974, 978 (E.D. Cal.
15  2000). Rule 201(b) provides: "A judicially noticed fact must be one not subject to
16  reasonable dispute in that it is either (1) generally known within the territorial
17  jurisdiction of the trial court or (2) capable of accurate and ready determination by
18  resort to sources whose accuracy cannot be reasonably questioned."

19

20  Dated: January 29, 2008          CALL, JENSEN & FERRELL
21                                   A Professional Corporation
                                     SCOTT J. FERRELL
22                                   LISA A. WEGNER

23

24                                   By:    /s/*Lisa A. Wegner*
                                        Attorneys for Defendant Marie Callender's
25                                      Pie Shops, Inc. d.b.a. Marie Callender's #254

26

27

28

ALL, JENSEN &
FERRELL
PROFESSIONAL
CORPORATION

TRC01-08:342936_1:1-30-08                    - 2 -                    07-CV-2129 BTM (AJB)
REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION FOR ORDER DECLINING
SUPPLEMENTAL JURISDICTION

**PINNOCK & WAKEFIELD**
A Professional Corporation
Theodore A. Pinnock, Esq.      Bar #: 153434
David C. Wakefield, Esq.       Bar #: 185736
Michelle L. Wakefield, Esq.    Bar #: 200424
3033 Fifth Avenue, Suite 410
San Diego, CA 92103
E-Mail: TheodorePinnock@PinnockWakefieldLaw.com
        DavidWakefield@PinnockWakefieldLaw.com
        MichelleWakefield@PinnockWakefieldLaw.com
Telephone:    619.858.3671
Facsimile:    619.858.3646

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUTERBRIDGE ACCESS ASSOCIATION, SUING ON BEHALF OF DIANE CROSS; and DIANE CROSS, An Individual, <br><br> Plaintiffs, <br><br> v. <br><br> MARIE CALLENDER'S PIE SHOPS, INC. d.b.a. MARIE CALLENDER'S #254; PACIFIC BAGELS, LLC d.b.a. BRUEGGARS BAGELS; COURTYARD HOLDINGS, LP; AND DOES 1 THROUGH 10, Inclusive, <br><br> Defendants. | Case No.: 07cv2129 BTM (AJB) <br><br> FIRST AMENDED COMPLAINT <br><br> CLASS ACTION <br><br> DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS [42 U.S.C. 12182(a) ET. SEQ; CIVIL CODE 51, 52, 54, 54.1, 54.3] <br><br> DEMAND FOR JURY TRIAL [F.R.Civ.P. rule 38(b)] |

## INTRODUCTION

1.    Plaintiffs OUTERBRIDGE ACCESS ASSOCIATION, SUING ON BEHALF OF DIANE CROSS AND ITS MEMBERS; and DIANE CROSS, An Individual, herein complain, by filing this Civil Complaint in accordance with rule 8 of the Federal Rules of Civil Procedure in the Judicial

1

District of the United States District Court of the Southern
District of California, that Defendants have in the past, and
presently are, engaging in discriminatory practices against
individuals with disabilities, specifically including minorities
with disabilities. Plaintiffs allege this civil action and others
substantial similar thereto are necessary to compel access
compliance because empirical research on the effectiveness of
Title III of the Americans with Disabilities Act indicates this
Title has failed to achieve full and equal access simply by the
executive branch of the Federal Government funding and promoting
voluntary compliance efforts.  Further, empirical research shows
when individuals with disabilities give actual notice of potential
access problems to places of public accommodation without a
federal civil rights action, the public accommodations do not
remove the access barriers.  Therefore, Plaintiffs make the
following allegations in this federal civil rights action:

### JURISDICTION AND VENUE

2.   The federal jurisdiction of this action is based on the
Americans with Disabilities Act, 42 United States Code 12101-
12102, 12181-12183 and 12201, et seq.  Venue in the Judicial
District of the United States District Court of the Southern
District of California is in accordance with 28 U.S.C. § 1391(b)
because a substantial part of Plaintiffs' claims arose within the
Judicial District of the United States District Court of the
Southern District of California.

### SUPPLEMENTAL JURISDICTION

3.   The Judicial District of the United States District Court of

2

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

the Southern District of California has supplemental jurisdiction

over the state claims as alleged in this Complaint pursuant to 28

U.S.C. § 1367(a).  The reason supplemental jurisdiction is proper

in this action is because all the causes of action or claims

derived from federal law and those arising under state law, as

herein alleged, arose from common nucleus of operative facts.  The

common nucleus of operative facts, include, but are not limited

to, the incidents where Plaintiffs were denied full and equal

access to Defendants' facilities, goods, and/or services in

violation of both federal and state laws when they attempted to

enter, use, and/or exit Defendants' facilities as described below

within this Complaint.  Further, due to this denial of full and

equal access, OUTERBRIDGE ACCESS ASSOCIATION, SUING ON BEHALF OF

DIANE CROSS and DIANE CROSS, An Individual, and other persons with

disabilities were injured.  Based upon the said allegations, the

state actions, as stated herein, are so related to the federal

actions that they form part of the same case or controversy and

one would ordinarily expect the actions to be tried in one

judicial proceeding.

### NAMED DEFENDANTS AND NAMED PLAINTIFF

4.   Defendants are, and, at all times mentioned herein, were, a

business or corporation or franchise organized and existing and/or

doing business under the laws of the State of California.

Plaintiff is informed and believes and thereon alleges that

Defendant MARIE CALLENDER'S PIE SHOPS, INC. is the owner,

operator, franchiser, licensor, and/or is doing business as MARIE

CALLENDER'S #254. Defendant MARIE CALLENDER'S PIE SHOPS, INC.

3

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

d.b.a. MARIE CALLENDER'S #254 is located at 11122 Rancho Carmel Drive, San Diego, California 92128, Assessor Parcel Number: 313-730-38.  Plaintiff is informed and believes and thereon alleges that Defendant PACIFIC BAGELS, LLC is the owner, operator, franchiser, licensor, and/or is doing business as BRUEGGARS BAGELS. Defendant PACIFIC BAGELS, LLC d.b.a. BRUEGGARS BAGELS is located at 11134 Rancho Carmel Drive, San Diego, California 92128, Assessor Parcel Number: 313-042-04. Plaintiff is informed and believes and thereon alleges that Defendant COURTYARD HOLDINGS, LP is the owner, operator, and/or lessor of the real property located at 11122 Rancho Carmel Drive, San Diego, California 92128, Assessor Parcel Number: 313-730-38. Defendant COURTYARD HOLDINGS, LP is located at 601 Thirteenth Street, Suite 450, Washington, DC 20005.

5.    The words Plaintiff, Plaintiffs, Plaintiff's Member, and Plaintiff's Members as used herein specifically include OUTERBRIDGE ACCESS ASSOCIATION, SUING ON BEHALF OF DIANE CROSS and DIANE CROSS, An Individual.

6.    Defendants Does 1 through 10, were at all times relevant herein subsidiaries, employers, employees, agents, of MARIE CALLENDER'S PIE SHOPS, INC. d.b.a. MARIE CALLENDER'S #254; PACIFIC BAGELS, LLC d.b.a. BRUEGGARS BAGELS; and COURTYARD HOLDINGS, LP. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will pray leave of the court to amend this complaint to allege the true names and capacities of the Does when ascertained.

4

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

7.    Plaintiffs are informed and believe, and thereon allege, that Defendants and each of them herein were, at all times relevant to the action, the owner, lessor, lessee, franchiser, franchisee, general partner, limited partner, agent, employee, representing partner, or joint venturer of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent to, ratified, and/or authorized the acts alleged herein to each of the remaining Defendants.

**STATEWIDE CLASS ACTION ALLEGATIONS UNDER FED.R.CIV.P. 23(b) AS TO ALL DEFENDANTS**

8.    Plaintiffs are members of a group within the State of California composed of persons with a wide range of disabilities, limited to persons who use wheelchairs for mobility, who must be able to access retail merchandise establishments, like Defendants' establishments located at 11122 Rancho Carmel Drive, San Diego, California 92128, Assessor Parcel Number: 313-730-38, and 11134 Rancho Carmel Drive, San Diego, California 92128, Assessor Parcel Number: 313-042-04.  Plaintiffs are precluded from equal access to Defendants' establishments so meaningfully because the establishments, and each of them, fail to provide access for members of the disability community who use a wheelchair for mobility to the disabled parking, exterior path of travel, entrance, food service counter, and women's restroom and seating within the facilities.  The Supreme Court of the United States has held as long as the class representative provides adequate

5

representation for the class' interests, the court has the power
to adjudicate the rights and obligations of all class members –
even those who would otherwise be beyond the reach of its personal
jurisdiction. <u>Phillips Petroleum Co. v. Shutts</u>, 472 US 797 (1985).
This case stands for the proposition that minimum contacts are not
required with nonresident members of a plaintiff class because,
"the burdens placed by a State upon absent class action plaintiff
are not of the same order or magnitude as those it places on an
absent defendant." <u>Id.</u> Plaintiffs allege they will insure class
members shall receive adequate notice of the proceedings and the
opportunity to "opt out," if required

9.   Defendants have conducted themselves such as to establish a
pattern and practice of architectural discrimination. Plaintiffs
allege that Defendants have control over each and every facility,
establishment, and/or business located within the property located
at 11122 Rancho Carmel Drive, San Diego, California 92128,
Assessor Parcel Number: 313-730-38, and 11134 Rancho Carmel Drive,
San Diego, California 92128, Assessor Parcel Number: 313-042-04.
Accordingly, Plaintiffs allege Defendants are responsible for
removing architectural barriers at Defendants' facilities and the
establishments/businesses contained therein.

10.  For the aforementioned reasons, Plaintiffs allege they are
proper class representatives for members of the disability
community who use a wheelchair for mobility because the members of
the disability community who use a wheelchair for mobility are so
numerous that joinder is impracticable due to the fact more than
one hundred (100) persons fall within the membership description.

6

Also, the questions of law or fact are so common because the members of the disability community who use a wheelchair for mobility are being denied their civil rights under federal and state laws – that is, each member of the disability community who use a wheelchair for mobility suffered substantially similar violations relating to the disabled parking, exterior path of travel, entrance, food service counter, and women's restroom and seating within the facility.  Further, the claims or defenses of the representative parties are typical – Plaintiffs have the right to access facilities, establishments, and businesses like those within the property located at 11122 Rancho Carmel Drive, San Diego, California 92128, Assessor Parcel Number: 313-730-38, and 11134 Rancho Carmel Drive, San Diego, California 92128, Assessor Parcel Number: 313-042-04, and the businesses that are located thereon for many reasons including without limitation the purchase of retail merchandise.  Defendants' facilities are open to the general public and Plaintiffs have been denied access because of violations, as outlined above and specifically addressed elsewhere within this Civil Complaint.

11.  Additionally, Plaintiffs, as the named representatives, will fairly and adequately represent the interests of the class because Plaintiffs and the members of the disability community in the State of California who use a wheelchair for mobility have suffered substantially similar violations.  Finally, a pattern and practice exists on the part of Defendants, and each of them, of architectural discrimination at their public facilities located within the State of California.  On information and good faith

7

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

belief, Plaintiffs thereon allege that Defendants, prior to the
passing of the Americans With Disabilities Act in 1992, conceived,
commissioned, designed, and implemented among other things, a
design for their public facilities, including, but not limited to
the disabled parking, exterior path of travel, entrance, food
service counter, and women's restroom and seating within the
facility which do not meet the minimal standards outlined under
the federal regulations known as the Americans With Disabilities
Act Accessibility Guidelines ("ADAAG") and state regulations, also
known as Title 24 of the California Building Code, and to which
non-compliant plan they continue to utilize to the injury of the
members of the class.  For these reasons and the facts as stated
herein, Plaintiffs have the right to maintain this statewide class
action pursuant to Fed.R.Civ.P. Rule 23(b).

### CONCISE SET OF FACTS

12.  Plaintiff OUTERBRIDGE ACCESS ASSOCIATION is an organization
that advocates on the behalf of its members with disabilities when
their civil rights and liberties have been violated.  Plaintiff's
member DIANE CROSS is a member of Plaintiff Organization and has
physical impairments and due to these physical impairments she has
learned to successfully operate a wheelchair.  Further,
Plaintiff's Member and Plaintiff DIANE CROSS' said physical
impairments substantially limits one or more of the following
major life activities including but not limited to:  walking.
13.  On November 11, 2006, Plaintiff CROSS went to Defendants'
public accommodation facilities known as MARIE CALLENDER'S PIE
SHOPS, INC. d.b.a. MARIE CALLENDER'S #254; PACIFIC BAGELS, LLC

8

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

d.b.a. BRUEGGARS BAGELS; COURTYARD HOLDINGS, LP, located at 11122
Rancho Carmel Drive, San Diego, California 92128, Assessor Parcel
Number: 313-730-38, and 11134 Rancho Carmel Drive, San Diego,
California 92128, Assessor Parcel Number: 313-042-04, to utilize
their goods and/or services accompanied by a friend.  When
Plaintiff CROSS patronized Defendants' facilities, she was unable
to use and/or had difficulty using the public accommodations'
facilities within the common area including but not limited to the
disabled parking and exterior path of travel, as said were not
accessible because they failed to comply with ADA Access
Guidelines For Buildings and Facilities (hereafter referred to as
"ADAAG" and codified in 28 C.F.R. Part 36, App. A) and/or
California's Title 24 Building Code Requirements. Defendants
failed to remove barriers to equal access within the common area
in which the public accommodation facilities known as MARIE
CALLENDER'S PIE SHOPS, INC. d.b.a. MARIE CALLENDER'S #254; and
PACIFIC BAGELS, LLC d.b.a. BRUEGGARS BAGELS are located.

14.  Plaintiff CROSS personally experienced difficulty with said
access barriers within the common area in which the public
accommodation facilities known as MARIE CALLENDER'S PIE SHOPS,
INC. d.b.a. MARIE CALLENDER'S #254, (hereinafter "MARIE
CALLENDER'S #254"), and PACIFIC BAGELS, LLC d.b.a. BRUEGGARS
BAGELS, (hereinafter "BRUEGGARS BAGELS"), are located. The
following examples of known barriers to access are not an
exhaustive list of the barriers to access that exist within the
common area of Defendants' facilities.  For example, a "Van
Accessible" disabled parking space is located directly in front of

9

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

Pearle Vision, which is near MARIE CALLENDER'S #254; and BRUEGGARS BAGELS. The access aisle for this "Van Accessible" disabled parking space fails to be compliant, as a ramp impermissibly encroaches into the access aisle. There are two (2) designated disabled parking spaces directly serving MARIE CALLENDER'S #254. The access aisle in between these two spaces fails to be accessible, as a ramp impermissibly encroaches into this access aisle. There is also a "Van Accessible" disabled parking space located in the middle of the parking lot. This space fails to be accessible, as it fails to be provide an accessible route to any of the facilities entrance located within the complex. Patrons using this space would be forced to transverse through vehicular traffic without the benefit of a marked path of travel.

15.   When Plaintiff CROSS patronized Defendants' MARIE CALLENDER'S #254 facilities, she was unable to use and/or had difficulty using the public accommodations' facilities including but not limited to the entrance, food service counter, and women's restroom, as said were not accessible because they failed to comply with ADA Access Guidelines For Buildings and Facilities (hereafter referred to as "ADAAG" and codified in 28 C.F.R. Part 36, App. A) and/or California's Title 24 Building Code Requirements. Defendants failed to remove barriers to equal access within the public accommodation facilities known as MARIE CALLENDER'S #254.

16.   Plaintiff CROSS personally experienced difficulty with said access barriers at MARIE CALLENDER'S #254. The following examples of known barriers to access are not an exhaustive list of the barriers to access that exist at Defendants' facilities.  For

10

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

example, the entrance to MARIE CALLENDER'S #254 fails to display the required International Symbol of Accessibility. The salad bar fails to be accessible, as condiments fail to be located within accessible reach ranges

17.   The entrance door to the women's restroom within MARIE CALLENDER'S #254 fails to be accessible, as it requires an excessive amount of pressure to open. Also, within the women's restroom, the lavatory handles fail to be accessible, as they require tight grasping and/or twisting of the wrist to operate.

18.   When Plaintiff CROSS patronized Defendants' BRUEGGARS BAGELS facilities, she was unable to use and/or had difficulty using the public accommodations' facilities including but not limited to the entrance, food service counters, women's restroom, and seating, as said were not accessible because they failed to comply with ADA Access Guidelines For Buildings and Facilities (hereafter referred to as "ADAAG" and codified in 28 C.F.R. Part 36, App. A) and/or California's Title 24 Building Code Requirements. Defendants failed to remove barriers to equal access at the public accommodation facilities known as BRUEGGARS BAGELS.

19.   Plaintiff CROSS personally experienced difficulty with said access barriers at BRUEGGARS BAGELS. The following examples of known barriers to access are not an exhaustive list of the barriers to access that exist at Defendants' facilities.  For example, the entrance to BRUEGGARS BAGELS fails to display the required International Symbol of Accessibility.

20.   The counter within BRUEGGARS BAGELS where patrons order and also where the trays are kept fails to be accessible, as it is too

11

high to be accessible. There also fails to be any disability
signage informing disabled patrons that assistance is available
upon request. Also, the tableware, condiments, and napkins fail to
be accessible, as they fail to be located within accessible reach
ranges. The napkins are located impermissibly high above the trash
receptacle.

21.  Within BRUEGGARS BAGELS, the women's restroom fails to be
accessible, as highchairs were stacked in front of the door. Also
within the BRUEGGARS BAGELS women's restroom, the paper towel
dispenser fails to be accessible, as it is mounted at an excessive
52" high and the toilet tissue dispenser fails to be accessible,
as it is mounted an impermissible 44" high.

22.  BRUEGGARS BAGELS fails to provide any accessible seating
inside or outside of the facility.

23.  Plaintiffs can prove these barriers as Plaintiffs conducted a
preliminary survey of Defendants' facilities. Plaintiff
Association alleges that its visually and hearing impaired members
desire to go to Defendants' facility but cannot because of lack of
auxiliary aids.  Plaintiffs specifically allege that Defendants
knew, to a substantial certainty, that the architectural barriers
precluded wheelchair access.  First, Plaintiffs will prove that
Defendants had actual knowledge that the architectural barriers
precluded wheelchair access and that the noncompliance with ADAAG
as to accessible entrances was intentional.  Second, due to the
abundance of ADA information and constant news covers of ADA
lawsuits, Defendants had actual knowledge of the ADA and decided
deliberately not to remove architectural barriers.  Third,

12

Defendants have no plans to remodel.  Fourth, Defendants had actual knowledge of ADA given all the ADA public awareness campaigns, the abundance of free ADA information and the media's constant ADA coverage.  Fifth, a human being acting for the defendants made a conscious decision as to how to proceed given the presence of the architectural barriers.  Plaintiffs allege any alternative methods preclude integration of wheelchair patrons, as it requires them to use a second-class entrance. Also, expert testimony will show the facility contained inaccessible features.  Plaintiffs allege businesses often state that they have few customers with disabilities.  Plaintiffs allege such customers avoid patronizing inaccessible business and are deterred from patronizing such businesses.

24.  Plaintiff's Member and Plaintiff DIANE CROSS intends to return to Defendants' public accommodation facilities in the immediate future.  Plaintiffs' Member and Plaintiff DIANE CROSS is presently deterred from returning due to her knowledge of the barriers to access that exist at Defendants' facilities.

25.  Pursuant to federal and state law, Defendants are required to remove barriers to their existing facilities.  Further, Defendants had actual knowledge of their barrier removal duties under the Americans with Disabilities Act and the Civil Code before January 26, 1992.  Also, Defendants should have known that individuals with disabilities are not required to give notice to a governmental agency before filing suit alleging Defendants failed to remove architectural barriers.

26.  Based on these facts, Plaintiffs allege they were

13

discriminated against each time they patronized Defendants'
facilities.  Plaintiff's Member and Plaintiff DIANE CROSS was
extremely upset due to Defendants' conduct.

### NOTICE

27.  Plaintiffs are not required to provide notice to the
defendants prior to filing a complaint. Skaff v Meridien N. Am.
Beverly Hills, LLC, 506 F.3d 832 (9th Cir. 2007), see also Botosan
v. Paul McNally Realty, 216 F.3d 827, 832 (9th Cir 2000).


**WHAT CLAIMS ARE PLAINTIFFS ALLEGING AGAINST EACH NAMED DEFENDANT**

28.  MARIE CALLENDER'S PIE SHOPS, INC. d.b.a. MARIE CALLENDER'S
#254; PACIFIC BAGELS, LLC d.b.a. BRUEGGARS BAGELS; COURTYARD
HOLDINGS, LP; and Does 1 through 10 will be referred to
collectively hereinafter as "Defendants."

29.  Plaintiffs aver that the Defendants are liable for the
following claims as alleged below:

### DISCRIMINATORY PRACTICES IN PUBLIC ACCOMMODATIONS

FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS– **Claims Under The
Americans With Disabilities Act Of 1990**

CLAIM I AGAINST ALL DEFENDANTS: **Denial Of Full And Equal Access**

30.  Based on the facts plead at ¶¶ 12 - 28 above and elsewhere in
this complaint, Plaintiff's Member and Plaintiff DIANE CROSS was
denied full and equal access to Defendants' goods, services,
facilities, privileges, advantages, or accommodations.  Plaintiffs
allege Defendants are a public accommodation owned, leased and/or
operated by Defendants. Defendants' existing facilities and/or
services failed to provide full and equal access to Defendants'

14

facility as required by 42 U.S.C. § 12182(a).  Thus, Plaintiff's

Member and Plaintiff DIANE CROSS was subjected to discrimination

in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42

U.S.C. § 12188 because Plaintiff's Member and Plaintiff DIANE

CROSS was denied equal access to Defendants' existing facilities.

31.  Plaintiff's Member and Plaintiff DIANE CROSS has physical

impairments as alleged in ¶ 12 above because her conditions affect

one or more of the following body systems:  neurological,

musculoskeletal, special sense organs, and/or cardiovascular.

Further, Plaintiff's Member and Plaintiff DIANE CROSS' said

physical impairments substantially limits one or more of the

following major life activities:  walking.  In addition,

Plaintiff's Member and Plaintiff DIANE CROSS cannot perform one or

more of the said major life activities in the manner, speed, and

duration when compared to the average person.  Moreover,

Plaintiff's Member and Plaintiff DIANE CROSS has a history of or

has been classified as having a physical impairment as required by

42 U.S.C. § 12102(2)(A).


CLAIM II AGAINST ALL DEFENDANTS: **Failure To Make Alterations In
Such A Manner That The Altered Portions Of The Facility Are
Readily Accessible And Usable By Individuals With Disabilities**

32.  Based on the facts plead at ¶¶ 12 - 28 above and elsewhere in

this complaint, Plaintiff's Member and Plaintiff DIANE CROSS was

denied full and equal access to Defendants' goods, services,

facilities, privileges, advantages, or accommodations within a

public accommodation owned, leased, and/or operated by Defendants.

15

Defendants altered their facility in a manner that affects or could affect the usability of the facility or a part of the facility after January 26, 1992. In performing the alteration, Defendants failed to make the alteration in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, in violation of 42 U.S.C. §12183(a)(2).

33.    Additionally, the Defendants undertook an alteration that affects or could affect the usability of or access to an area of the facility containing a primary function after January 26, 1992. Defendants further failed to make the alterations in such a manner that, to the maximum extent feasible, are readily accessible to and usable by individuals with disabilities in violation 42 U.S.C. §12183(a)(2).

34.    Pursuant to 42 U.S.C. §12183(a), this failure to make the alterations in a manner that, to the maximum extent feasible, are readily accessible to and usable by individuals with disabilities constitutes discrimination for purposes of 42 U.S.C. §12183(a). Therefore, Defendants discriminated against Plaintiffs in violation of 42 U.S.C. § 12182(a).

35.    Thus, Plaintiff's Member and Plaintiff DIANE CROSS was subjected to discrimination in violation of 42 U.S.C. § 12183(a), 42 U.S.C. §12182(a) and 42 U.S.C. §12188 because Plaintiff's Member and Plaintiff DIANE CROSS was denied equal access to Defendants' existing facilities.

16

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

CLAIM III AGAINST ALL DEFENDANTS: **Failure To Remove Architectural Barriers**

36.   Based on the facts plead at ¶¶ 12 - 28 above and elsewhere in this complaint, Plaintiff's Member and Plaintiff DIANE CROSS was denied full and equal access to Defendants' goods, services, facilities, privileges, advantages, or accommodations within a public accommodation owned, leased, and/or operated by Defendants. Defendants failed to remove barriers as required by 42 U.S.C. § 12182(a).  Plaintiffs are informed, believe, and thus allege that architectural barriers which are structural in nature exist within the physical elements of Defendants' facilities. Title III requires places of public accommodation to remove architectural barriers that are structural in nature to existing facilities. [See, 42 United States Code 12182(b)(2)(A)(iv).]  Failure to remove such barriers and disparate treatment against a person who has a known association with a person with a disability are forms of discrimination.  [See 42 United States Code 12182(b)(2)(A)(iv).]  Thus, Plaintiff's Member and Plaintiff DIANE CROSS was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because they were denied equal access to Defendants' existing facilities.

CLAIM IV AGAINST ALL DEFENDANTS: **Failure To Modify Practices, Policies And Procedures**

37.   Based on the facts plead at ¶¶ 12 - 28 above and elsewhere in this complaint, Defendants failed and refused to provide a reasonable alternative by modifying its practices, policies and

17

FIRST AMENDED COMPLAINT<br>CASE NUMBER: 07cv2129 BTM (AJB)

procedures in that they failed to have a scheme, plan, or design to assist Plaintiffs and/or others similarly situated in entering and utilizing Defendants' services, as required by 42 U.S.C. § 12188(a). Thus, Plaintiff's Member and Plaintiff DIANE CROSS was subjected to discrimination in violation of 42 United States Code 12182(b)(2)(A)(iv) and 42 U.S.C. § 12188 because Plaintiff's Member and Plaintiff DIANE CROSS was denied equal access to Defendants' existing facilities.

38. Based on the facts plead at ¶¶ 12 - 28 above, Claims I, II, and III of Plaintiff's First Cause Of Action above, and the facts elsewhere herein this complaint, Plaintiffs will suffer irreparable harm unless Defendants are ordered to remove architectural, non-architectural, and communication barriers at Defendants' public accommodation. Plaintiffs allege that Defendants' discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiffs and a substantial segment of the disability community. Plaintiffs allege there is a national public interest in requiring accessibility in places of public accommodation. Plaintiffs have no adequate remedy at law to redress the discriminatory conduct of Defendants. Plaintiffs desire to return to Defendants' places of business in the immediate future. Accordingly, the Plaintiffs allege that a structural or mandatory injunction is necessary to enjoin compliance with federal civil rights laws enacted for the benefit of individuals with disabilities.

39. WHEREFORE, Plaintiffs pray for judgment and relief as hereinafter set forth.

18

SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS - **CLAIMS UNDER**

**CALIFORNIA ACCESSIBILITY LAWS**

CLAIM I: **Denial Of Full And Equal Access**

40.   Based on the facts plead at ¶¶ 12 - 28 above and elsewhere in

this complaint, Plaintiff's Member and Plaintiff DIANE CROSS was

denied full and equal access to Defendants' goods, services,

facilities, privileges, advantages, or accommodations within a

public accommodation owned, leased, and/or operated by Defendants

as required by Civil Code Sections 54 and 54.1.  Defendants'

facility violated California's Title 24 Accessible Building Code

by failing to provide access to Defendants' facilities.

41.   These violations denied Plaintiff's Member and Plaintiff

DIANE CROSS full and equal access to Defendants' facility. Thus,

Plaintiff's Member and Plaintiff DIANE CROSS was subjected to

discrimination pursuant to Civil Code §§ 51, 52, and 54.1 because

Plaintiff's Member and Plaintiff DIANE CROSS was denied full,

equal and safe access to Defendants' facility, causing severe

emotional distress.


CLAIM II: **Failure To Modify Practices, Policies And Procedures**

42.   Based on the facts plead at ¶¶ 12 - 28 above and elsewhere

herein this complaint, Defendants failed and refused to provide a

reasonable alternative by modifying its practices, policies, and

procedures in that they failed to have a scheme, plan, or design

to assist Plaintiffs and/or others similarly situated in entering

and utilizing Defendants' services as required by Civil Code §

19

54.1.   Thus, Plaintiff's Member and Plaintiff DIANE CROSS was
subjected to discrimination in violation of Civil Code § 54.1.

CLAIM III: **Violation Of The Unruh Act**

43.   Based on the facts plead at ¶¶ 12 - 28 above and elsewhere
herein this complaint and because Defendants violated the Civil
Code § 51 by failing to comply with 42 United States Code §
12182(b)(2)(A)(iv) and 42 U.S.C. § 12183(a)(2), Defendants did and
continue to discriminate against Plaintiffs and persons similarly
situated in violation of Civil Code §§ 51, 52, and 54.1.

44.   Based on the facts plead at ¶¶ 12 - 28 above, Claims I, II,
and III of Plaintiffs' Second Cause Of Action above, and the facts
elsewhere herein this complaint, Plaintiffs will suffer
irreparable harm unless Defendants are ordered to remove
architectural, non-architectural, and communication barriers at
Defendants' public accommodation.  Plaintiffs allege that
Defendants' discriminatory conduct is capable of repetition, and
this discriminatory repetition adversely impacts Plaintiffs and a
substantial segment of the disability community.  Plaintiffs
allege there is a state and national public interest in requiring
accessibility in places of public accommodation.  Plaintiffs have
no adequate remedy at law to redress the discriminatory conduct of
Defendants.  Plaintiffs desire to return to Defendants' places of
business in the immediate future.  Accordingly, the Plaintiffs
allege that a structural or mandatory injunction is necessary to
enjoin compliance with state civil rights laws enacted for the
benefit of individuals with disabilities.

45.   Wherefore, Plaintiffs pray for damages and relief as

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

hereinafter stated.

**Treble Damages Pursuant To Claims I, II, III Under The California**

**Accessibility Laws**

46.   Defendants, each of them respectively, at times prior to and

including, the month of November of 2006, and continuing to the

present time, knew that persons with physical disabilities were

denied their rights of equal access to all potions of this public

facility.  Despite such knowledge, Defendants, and each of them,

failed and refused to take steps to comply with the applicable

access statutes; and despite knowledge of the resulting problems

and denial of civil rights thereby suffered by Plaintiffs and

other similarly situated persons with disabilities.  Defendants,

and each of them, have failed and refused to take action to grant

full and equal access to persons with physical disabilities in the

respects complained of hereinabove.  Defendants, and each of them,

have carried out a course of conduct of refusing to respond to, or

correct complaints about, denial of disabled access and have

refused to comply with their legal obligations to make Defendants'

public accommodation facilities accessible pursuant to the

Americans With Disability Act Access Guidelines (ADAAG) and Title

24 of the California Code of Regulations (also known as the

California Building Code).  Such actions and continuing course of

conduct by Defendants, and each of them, evidence despicable

conduct in conscious disregard of the rights and/or safety of

Plaintiffs and of other similarly situated persons, justifying an

award of treble damages pursuant to sections 52(a) and 54.3(a) of

21

FIRST AMENDED COMPLAINT
CASE NUMBER: 07cv2129 BTM (AJB)

the California Civil Code.

47.   Defendants, and each of their actions have also been oppressive to persons with physical disabilities and of other members of the public, and have evidenced actual or implied malicious intent toward those members of the public, such as Plaintiffs and other persons with physical disabilities who have been denied the proper access to which they are entitled by law. Further, Defendants, and each of their, refusals on a day-to-day basis to correct these problems evidence despicable conduct in conscious disregard for the rights of Plaintiffs and other members of the public with physical disabilities.

48.   Plaintiffs pray for an award of treble damages against Defendants, and each of them, pursuant to California Civil Code sections 52(a) and 54.3(a), in an amount sufficient to make a more profound example of Defendants and encourage owners, lessors/lessees, and operators of other public facilities from willful disregard of the rights of persons with disabilities. Plaintiffs do not know the financial worth of Defendants, or the amount of damages sufficient to accomplish the public purposes of section 52(a) of the California Civil Code and section 54.3 of the California Civil Code.

49.   Wherefore, Plaintiffs pray for damages and relief as hereinafter stated.

///

///

**DEMAND FOR JUDGMENT FOR RELIEF:**

A.   For general damages pursuant to Cal. Civil Code §§ 52 or

22

54.3;

B.     For $4,000 in damages pursuant to Cal. Civil Code § 52 for each and every offense of Civil Code § 51, Title 24 of the California Building Code, ADA, and ADA Accessibility Guidelines;

C.     In the alternative to the damages pursuant to Cal. Civil Code § 52 in Paragraph B above, for $1,000 in damages pursuant to Cal. Civil Code § 54.3 for each and every offense of Civil Code § 54.1, Title 24 of the California Building Code, ADA, and ADA Accessibility Guidelines;

D.     For injunctive relief pursuant to 42 U.S.C. § 12188(a). Plaintiffs request this Court enjoin Defendants to remove all architectural barriers in, at, or on their facilities.

E.     For attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and Cal. Code of Civil Procedure §§ 1032 and 1033.5;

F.     For treble damages pursuant to Cal. Civil Code §§ 52(a) or 54.3(a);

G.     A Jury Trial and;

H.     For such other further relief as the court deems proper.

Respectfully submitted:

**PINNOCK & WAKEFIELD, A.P.C.**

Dated: January 15, 2008

By: s/ MICHELLE L. WAKEFIELD
Attorney for Plaintiffs
E-mail: MichelleWakefield@
PinnockWakefieldlaw.com

23

1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | TRIPLE AAA ASSOCIATION FOR              CASE NO. 06cv2199 DMS (WMC)
   | CHILDREN WITH DEVELOPMENTAL
12 | DISABILITIES, ET AL.,                  **ORDER GRANTING-IN-PART**
   |                                        **AND DENYING-IN-PART**
13 |                          Plaintiffs,   **DEFENDANTS' MOTION TO**
   |                                        **DISMISS SECOND AMENDED**
   |     vs.                                **COMPLAINT**
14 |
15 | DEL TACO INC., ET AL.,
   |
16 |                          Defendants.

17

18        This matter came before the Court on Defendants' motion to dismiss the Second Amended

19  Complaint ("SAC"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). On January 19, 2006, Plaintiffs

20  filed their opposition to Defendants' motion, and Defendants filed a reply on January 26, 2007. Oral

21  argument was heard on February 9, 2006, at which time Plaintiffs did not appear, and some but not

22  all Defendants appeared. Having carefully reviewed the briefs submitted by the parties, Defendants'

23  motion is granted-in-part and denied-in-part.

24                                          **I.**

25                                  **BACKGROUND**

26        While not a model pleading, the following facts are deciphered from the SAC. Plaintiffs

27  appear to include: Triple AAA Association for Children with Developmental Disabilities ("Triple

28  AAA") suing on behalf of John Carpenter, Marvin Allan and its members; John Carpenter, an

**EXHIBIT B**

1  individual, and "persons who associated with its Members who accompanied Members to Defendants'

2  facilities." (SAC at ¶ 4.)  Triple AAA alleges it represents all "members of the disability community

3  who use wheelchairs for mobility" and who wish to access Defendants' establishment.  (*Id.* at ¶¶ 6,

4  7.)[1]  Triple AAA is an organization that advocates on behalf of children and disabled individuals.  (*Id.*

5  at ¶ 7.)  Defendants are Del Taco, LLC and sixteen Southern California Del Taco locations.  (*Id.*)

6      Plaintiffs allege they were denied "equal access to Defendants' establishment."  (SAC at ¶ 6.)

7  Both Plaintiffs Carpenter and Allan use a wheelchair or a walker for mobility.  (SAC at ¶ 7.)  Both

8  were unable to access the Southern California Del Taco locations in question as a result of numerous

9  alleged architectural barriers relating to lack of accessible routes, parking and passenger loading

10  zones, curb ramps, stairs, elevators, platform lifts, toilet stalls, sinks, telephones, and other matters.

11  (*Id.* at ¶¶ 6, 35.)

12      The SAC names sixteen Del Taco facilities located in Southern California:

13      1.    <u>3896 Clairemont Dr., San Diego, CA 92117</u>[2]

14      2.    7919 Mission Center Ct., San Diego, CA 92108

15      3.    3106 Sports Arena Blvd., San Diego, CA 92110

16      4.    1155 11th Ave., San Diego, CA 92101

17      5.    <u>670 Palomar St., Chula Vista, CA 91911</u>

18      6.    <u>9822 N. Magnolia Avenue, Santee, CA 92071</u>

19      7.    1270 W. Valley Pkwy., Escondido, CA 92029

20      8.    <u>110 W. El Norte Pkwy., Escondido, CA 92026</u>

21

---

22  [1] Plaintiff Triple AAA also alleges it represents "visually and hearing impaired members [who]
desire to go to Defendants' facilities but cannot because of lack of auxiliary aids."  (SAC at ¶ 7.)
23  Aside from this allegation, however, the SAC alleges no other facts regarding the visually and hearing
impaired.
24

25  [2] Defendant Del Taco, LLC contends *seven* of the sixteen Del Taco locations in question have
not yet appeared in this litigation.  (Motion at 4.)  Counsel for Del Taco, LLC has appeared in this
26  litigation on behalf of the LLC, as well as on behalf of *nine* "corporate-owned Southern California Del
Taco locations," identified above.  The other seven locations apparently are owned by independent
27  franchisees.  Pursuant to the Court's request at oral argument, Defendant Del Taco, LLC has submitted
an affidavit attesting that it neither owns nor operates the seven underlined Del Taco locations above.
28  (Decl. of Jack Tang Re: Corporation Owned Del Taco Locations.)  It appears, therefore, that Plaintiffs
have not yet served all defendants.  Accordingly, an order to show cause will issue as to why the
unserved defendants should not be dismissed.

|    |     |                                                       |
|----|-----|-------------------------------------------------------|
| 1  | 9.  | 1605 E. Valley Pkwy., Escondido, CA 92027            |
| 2  | 10. | 12314 Poway Rd., Poway, CA 92064                     |
| 3  | 11. | 1037 E. Bobier Drive, Vista, CA 92084               |
| 4  | 12. | 130 Calle Magdalena, Encinitas, CA 92024            |
| 5  | 13. | 1601 Carmelo Drive, Oceanside, CA 92054             |
| 6  | 14. | 2269 El Camino Real, Oceanside, CA                   |
| 7  | 15. | 2735 S. Figueroa Street, Los Angeles 90007          |
| 8  | 16. | 11446 Jefferson Blvd, Culver City, CA 90230         |

9   (SAC, ¶ 3.) Allan alleges he visited all but the last four of the above-listed Del Taco locations. (*Id.*
10  at ¶ 7.) Carpenter, on the other hand, patronized the remaining four. Carpenter asserts he visited the
11  Del Taco at 2735 S. Figueroa Street in Los Angeles "many times." (*Id.*) He also visited the Del Taco
12  in Culver City "many times," noting it is located near the CompUSA which he often frequents for
13  computer equipment. (*Id.*) Regarding the Del Taco locations in Oceanside, he alleges he regularly
14  visits a friend in Vista, California, and would patronize these locations during his visits. (*Id.*)

15          The SAC avers that Carpenter and Allan visited the Southern California Del Taco locations
16  during 2006 and "plan on returning to the places." (SAC at ¶ 7.) Both claim they have "actual
17  knowledge" that the locations contain architectural barriers precluding wheelchair access. (*Id.*)
18  Specifically, Plaintiffs contend the facilities do not "meet the minimal standards outlined under the
19  federal regulations known as the Americans with Disabilities Act Accessibility Guidelines." (*Id.* at
20  6.) Both Carpenter and Allan allege they "expressly intend to patronize [Defendant's] establishments
21  . . . in the immediate future." (*Id.* at ¶¶ 9, 13.) They maintain, however, that they "are expressly
22  deterred from returning to the establishments . . . due to the existence of the architectural barriers."
23  (*Id.* at ¶ 13.)

24          The SAC alleges claims under: (1) the ADA; (2) California's Disabled Persons Act ("DPA");
25  and (3) California's Unruh Civil Rights Act. Plaintiffs seek injunctive relief under the ADA, damages
26  pursuant California Civil Code § 52 or 54.3, and attorneys' fees under 42 U.S.C. § 1988, 42 U.S.C.
27  § 12205, and Cal. Civ. Code § 51 and 52.

28  / / /

## II.

## LEGAL STANDARDS

### A.    12(b)(1

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990). The court presumes lack of jurisdiction until the plaintiff proves otherwise. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir. 1989).

A motion to dismiss under Rule 12(b)(1) can be either "facial" or "factual." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *2 Moore's Federal Practice* § 12.30 (2004). With a facial attack, as here, a defendant may argue the allegations on the face of the complaint are insufficient to show federal subject matter jurisdiction. *See Warren v. Fox Family Wordwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). As with a Rule 12(b)(6) motion, the court must treat the allegations in the complaint as true and draw all inferences in favor of the plaintiff. *See Gould v. U.S.*, 220 F.3d 169, 176 (3rd Cir. 2000). In contrast, where a defendant brings a factual attack, the court's decision is based on extrinsic evidence quite apart from the pleadings. *Gould*, 220 F.3d at 176. The court may weigh the evidence and determine the facts in order to satisfy itself as to its power to hear the case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

### B.    12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). As with a facial attack under Rule 12(b)(1), all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill*, 80 F.3d at 338. The court, however, need not accept conclusory allegations as true; rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that

1    support the plaintiff's claim." *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir.

2    1984).

3                                          **III.**

4                                    **DISCUSSION**

5          Defendants' moving papers advance two arguments: (1) none of the Plaintiffs have standing

6    to bring this action; (2) the class allegations should be stricken because they are fatally overbroad and

7    are unnecessary in light of the relief sought.  In their reply, Defendants also address Plaintiffs'

8    argument that the Court should exercise supplemental jurisdiction over the state law claims.[3]

9          **A.    Article III Standing**

10         Standing is a jurisdictional requirement, and a party invoking federal jurisdiction bears the

11   burden of establishing it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To do so, the

12   plaintiff must show three things:

13

14         First, [he must have] suffered an injury in fact – an invasion of a legally
           protected interest which is (a) concrete and particularized, and (b) actual or
15         imminent, not conjecture or hypothetical.  Second, there must be a causal
           connection between the injury and the conduct complained of . . .  Third, it must
           be likely, as opposed to merely speculative, that the injury will be redressed by
16         a favorable decision.

17   *Id.* at 560-561. All three elements must exist for the plaintiff to have standing. *Vermont Agency of*

18   *Natural Resources v. United STates ex rel. Stevens*, 529 U.S. 765, 771 (2000).  The required showing

19   differs depending on the stage of the litigation. *Lujan*, 504 U.S. at 561.  "At the pleading stage,

20   general allegations of injury resulting from the defendant's conduct may suffice, for on a motion to

21   dismiss we 'presume that general allegations embrace those specific facts that are necessary to support

22   a claim.'" *Id.*  At the summary judgment stage, however, a plaintiff "can no longer rest on such 'mere

23   allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.*  At the final stage,

24   those facts, if controverted, must be "'supported adequately by the evidence adduced at trial." *Id.*

25   / / /

26

27         [3] Plaintiffs, apparently using a recycled brief from other ADA cases, argue in their opposition
     that the Court should retain jurisdiction over the state law claims.  Although Defendants did not move
28   to dismiss such claims, the Court may nonetheless decide the issue at this time as Plaintiffs raised the
     issue in their opposition and the matter has been fully briefed. *See Glenn K Jackson, Inc. v. Roe*, 273
     F.3d 1192 (9th Cir. 2001).

                                          - 5 -                                    06cv2199

1    Defendants' motion attacks only the first element – that Plaintiffs have not suffered an injury

2  in fact that is sufficiently "concrete and particularized," and "actual or imminent." Two cases guide

3  the Court's determination on this issue.

4    The first, *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002), sets out the

5  relevant law in this circuit. In *Pickern*, Jerry Doran, a paraplegic who used a wheelchair, sued Holiday

6  Quality Foods, a grocery store, alleging violations of the ADA. *Pickern*, 293 F.3d at 1135-6.

7  Although Doran patronized a number of Holiday stores, the store he sued was located 70 miles from

8  his residence, where his grandmother lived. *Id.* at 1135. Doran stated he would go to the store

9  whenever he visited his grandmother. *Id.* On a motion for summary judgment, the district court held

10  Doran's claim was time-barred and he lacked standing because he had not attempted to enter the store

11  during the limitations period. *Id.*

12    The Ninth Circuit reversed, holding Title III of the ADA does not require "'a person with a

13  disability to engage in a *futile gesture* [to gain access] if such person has actual notice" of the

14  violation. *Id.* (citations omitted) (emphasis in original.) The court emphasized: "under the ADA, once

15  a plaintiff has actually become aware of discriminatory conditions . . . , and is thereby deterred from

16  visiting or patronizing that accommodation, the plaintiff has suffered an injury." *Id.* at 136-7.

17  (citations omitted). The court further explained: "So long as the discriminatory conditions continue,

18  and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues."

19  *Id.* Because Doran stated he continued to be deterred by the barriers, he has suffered an injury. *Id.*

20

21    The court further held that Doran's injury was sufficiently "concrete and particularized" and

22  "actual or imminent." Citing *Lujan*, the court in *Pickern* noted: "By particularized, we mean the

23  injury must affect the plaintiff in a personal and individual way." *Pickern*, 293 F.3d at 1137. In the

24  ADA context, "we understand that to mean that Doran must himself suffer an injury as a result of the

25  [] store's noncompliance with the ADA." *Id.* By alleging that he was deterred from attempting to

26  gain access to the store, "Doran has stated sufficient facts to show concrete, particularized injury."

27  Moreover, Doran's injury was "imminent" because he stated he had "actual knowledge of the barriers

28  to access," he preferred to shop at Holiday markets, and he would shop at this market if it were

accessible. *Id.* These stated intentions, the court held, are "sufficient to establish actual or imminent

1    injury for purposes of standing." (citations omitted.)

2        The second case, *Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938 (C.D.Cal. 2005),

3    considers the standing question at the pleading stage. Molski, a paraplegic, sued Arby's for

4    discrimination under the ADA. 359 F. Supp. 2d at 943. Arby's pointed out that Molski was a

5    professional plaintiff who had filed hundreds of virtually identical lawsuits and routinely dismissed

6    them in exchange for a monetary settlement. *Id.* at 945. Applying *Pickern*, the court held that Molski

7    alleged he suffered an injury because he visited Arby's and was denied full access. *Id.* at 947. He also

8    alleged he would return to Arby's if it were made accessible to wheelchairs. *Id.* These allegations,

9    the court held, "clearly satisfy Mr. Molski's burden of alleging actual or imminent injury for purposes

10   of standing." *Id.*

11       The defendant in *Arby's* further argued that Molski had not demonstrated an imminent threat

12   of future harm because his home was located some 100 miles from the Arby's in question. The court

13   was unpersuaded, reasoning: "While such evidence may demonstrate a lack of standing at successive

14   stages in the litigation, it does not do so at the pleading stage." *Arby's*, 359 F. Supp. 2d at 947. At

15   the pleading stage, "when the Court is obligated to accept all material allegations as true, general

16   factual assertions of injury and future harm are sufficient." *Id.* It is only at "successive stages in the

17   litigation," that Molski is required to submit additional evidence to support his standing. *Id.* With

18   respect to the argument that Molski's brought the claim in bad faith, the court held his motivation for

19   bringing the claim was "irrelevant" for purposes of standing. *Id.* at 941, 945. "All that matters" is that

20   he visited the restaurant, was denied full access, and would return if those barriers were removed. *Id.*

21   at 941.

22                   **1.    Standing of Carpenter and Allan**

23       Similar to *Arby's*, Defendants argue Carpenter and Allan lack standing because (1) they have

24   not established a sufficient likelihood of future injury, *i.e.*, that they would return to the Del Taco

25   locations in question, and (2) this action was brought in bad faith. (Motion at 9-10.) As Defendants'

26   Rule 12(b)(1) motion mounts a facial, rather than factual, attack on the complaint, the Court will treat

27   the allegations in the complaint as true and draw all inferences in Plaintiffs' favor. *See Gould*, 220

28   F.3d at 176.

1    Accepting the allegations in the complaint as true, Carpenter and Allan have adequately

2  alleged an injury in fact. The SAC avers that both had "actual knowledge" of the architectural barriers

3  at Defendants' facilities. (SACt at ¶ 7.) Of the nine Del Taco facilities at issue, Allan visited five and

4  Carpenter visited four. (*Id.*) Both were unable to access the facilities as a result of numerous

5  architectural barriers relating to lack of "accessible route[s]," "parking and passenger loading zones,"

6  "elevators," and other matters. (Id. at ¶¶ 6, 35.) Both claim they "are expressly deterred from

7  returning," although they "intend to patronize" the establishments "in the immediate future." (*Id.* at

8  ¶¶ 9, 13.) Accepting these allegations as true, Carpenter and Allan have suffered an injury in fact that

9  is "concrete and particularized," and "actual or imminent."

10    Defendants argue Plaintiffs lack standing under "the newfound governing tests for determining

11  standing as early as pleading stages." (Reply at 1.) The test referenced by Defendants requires the

12  court to evaluate: (1) the proximity of the place of public accommodation to the plaintiff's residence,

13  (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of the plaintiff's plans

14  to return, and (4) the plaintiff's frequency of travel near defendant. (Motion at 1.) Defendants cite

15  several district court cases in support of their argument that Plaintiffs lack standing under the

16  foregoing test. (Reply at 8.)

17    The problem with Defendants' argument is that none of the cases cited from this Circuit are

18  decided at the pleading stage on a *facial* challenge. *See, e.g., Molski v. Mandarin Touch Restaurant,*

19  385 F. Supp. 2d 1042 (C.D. Cal. 2005) (standing addressed on motion for summary judgment); *Wilson*

20  *v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115 (S.D. Cal. 2006) (similar); *D'Lil v. Best Western*

21  *Encina Lodge & Suites*, 415 F. Supp. 2d 1048 (C.D. Cal. 2006) (standing addressed on request for

22  attorney's fees).[4] Defendants also cite *Jones v. Sears Roebuck & Co.*, 2006 WL 3437905 (E.D. Cal.

23

---

24    [4] Defendants also cite three out-of-circuit cases decided by district courts: *Small v. General Nutrition Cos.*, 388 F. Supp. 2d 83, 98 (E.D. N.Y. 2005); *Access 4 All, Inc. v. Wintergreen Comm'l*

25  *P'ship*, 2005 WL 2989307 (N.D. Tex. 2005); and *Equal Access for All v. Hughes Resort, Inc.*, 2005 WL 2001740 (N.D. Fla. 2005). (Reply at 1.) Although these cases decided the standing question at

26  the pleading stage on a facial challenge, they are distinguishable on several grounds. First, none of the cases apply *Pickern*, 293 F.3d 1133, which is the controlling authority in this Circuit. Second, in

27  *Small*, the plaintiff asked the court to infer that he knew of the barriers at the stores and that he would visit the stores but for the barriers. *Small*, 388 F. Supp. 2d at 89. Here, in contrast, Plaintiffs

28  affirmatively allege they knew of the barriers, and would visit the Del Taco restaurants but for the barriers. Similarly, in *Hughes Resort*, the court held the plaintiff's "asserted intention to return to the properties at some unspecified later date is insufficient to establish a 'continuing, adverse effect' as it demonstrates nothing more than a remote possibility of future injury." *Hughes Resort*, 2005 WL

1   2006). But that case does not assist Defendants because the 12(b)(1) motion there, unlike here,

2   mounted a *factual* attack on the complaint, where the plaintiff filed affidavits and other evidence

3   necessary to satisfy his burden of establishing standing. *See Savage v. Glendale Union High School*,

4   343 F.3d 1036, 1039, n.2 (9th Cir. 2003). Here, in contrast, Plaintiffs need not produce any evidence

5   to demonstrate standing. Rather, all that is necessary is an alleged intention to patronize the facilities

6   if they were ADA compliant. The sincerity of such allegations may be tested at a later stage of the

7   proceedings, but not at the pleading stage through a facial attack.[5]

8                    **2.    Organizational Standing**

9          An organization may assert standing either (1) on its own behalf or (2) as the representative

10  of its members. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19 (1982). When

11  asserting standing on its own behalf, an organization must demonstrate some injury to the association

12  itself that meets the constitutional as well as prudential standing limitations. *See id.* at 378-79.

13  Regarding the constitutional limitations, courts conduct the same inquiry with respect to an

14  organizational plaintiff: has it "alleged such personal stake in the outcome of the controversy as to

15  warrant [] invocation of federal-court jurisdiction?" *Id.*

16         Defendants argue Triple AAA lacks organizational standing because it has not alleged an

17  injury in fact. Defendants point out that the only damages likely to be suffered by Triple AAA are (1)

18  abstract, ideological injuries, and (2) litigation expenses, neither of which are sufficient to establish

19

20  2001740, * 6. The court pointed out the plaintiff had alleged no concrete travel plans to visit the
    defendant's hotels. Here, in contrast, Defendants are fast-food restaurants, not hotels, and Plaintiffs
21  need not allege "concrete travel plans" to patronize their facilities. *See Parr v. L&L Drive-Inn
    Restaurant*, 96 F. Supp. 2d 1065, 1079 (D. Haw. 2000) ("visiting a fast food restaurant, as opposed
22  to a hotel ..., is not the sort of event that requires advance planning.") Finally, *Wintergreen*, like
    *Hughes Resort*, involves hotels (not fast-food restaurants) and insufficient allegations to confer
23  standing, resulting in a dismissal without prejudice. Here, Plaintiffs have alleged sufficient facts under
    *Pickern* to confer standing.
24

25         [5] Defendants contend this suit constitutes "a 'drive-by' or 'off-the-shelf' lawsuit," designed
    to induce a "quick settlement." (Motion at 3, 9, 12.) Defendants ask the Court to take judicial notice
26  of the fact that Plaintiff Triple AAA has filed approximately 144 law suits in this district in the past
    nine months. The Court grants Defendants' request for judicial notice regarding the number of
27  lawsuits filed by Triple AAA, but not as to the motivation for bringing the lawsuits. Fed. R. Civ. P.
    201(b). In any event, it is unclear whether motivation for bringing a suit is relevant to the question
28  of standing. *See Molski v. Price*, 224 F.R.D. 479, 483 (C.D.Cal. 2004); *Brick Oven*, 406 F. Supp. 2d
    at 1126 ("[t]he Court can find no authority that . . . in order to have standing . . . a plaintiff must
    possess an intention to return to the inaccessible public accommodation that is not motivated in any
    way by advancing his litigation against that public accommodation.")

1    standing. (Motion at 12.) Plaintiffs' opposition neither addresses these arguments nor explains

2    whether Triple AAA is seeking standing in its own behalf. In fact, it is unclear from the SAC whether

3    organizational standing, in addition to associational standing, is sought. In light of Triple AAA's

4    failure to carry its burden, Defendants' motion is granted on this ground. *See Lujan*, 504 U.S. at 561

5    (party invoking federal jurisdiction bears burden of establishing standing).

6                                  **3.    Associational Standing**

7             An association has standing to sue as the representative of its members when: (1) its members

8    would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are

9    germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested

10   requires the participation of individual members in the lawsuit. *Hunt*, 432 U.S. at 343. Defendants

11   argue Plaintiffs cannot satisfy the first and third prongs of the *Hunt* test.

12            Regarding the first prong, Defendants claim Triple AAA has not established the standing of

13   its individual members. As already analyzed, the Court finds both Carpenter and Allan have standing

14   to sue.[6] Therefore, the first prong of the *Hunt* test is satisfied. With respect to the third prong, the

15   Court concludes the participation of Carpenter and Allan is not necessary. *See United Foods*, 517 U.S.

16   at 546 (individual participation of members is "not normally necessary when an association seeks

17   prospective or injunctive relief for its members." *See Brick Oven,* 406 F. Supp. 2d at 1127 (in ADA

18   case, "injunctive relief does not require the participation" of the organization's individual members.)

19   Defendants' motion is therefore denied on this ground.[7]

20

21

22            [6] At oral argument, Defendants argued it is unclear from the SAC whether Carpenter and Allan
23   are Triple AAA members. Such membership, however, may be inferred from the SAC. *See* SAC at
     ¶¶ 4, 7 ("Plaintiff's Member John Carpenter . . ."; "Plaintiff's Member Marvin Allan . . .")

24            [7] The SAC appears to allege that Triple AAA represents, in addition to all members who use
25   wheelchairs for mobility, "hearing and visually impaired members" (SAC at ¶ 7), and "persons who
     associated with its Members who accompanied Members to Defendants' facilities." (SAC at ¶ 4.)
26   To the extent Triple AAA alleges it represents such individuals, it lacks standing to do so. The SAC
     fails to identify any "hearing and visually impaired members" who would have standing to sue in their
27   own right. Nor does the SAC allege the standing of persons who accompanied disabled members to
     Defendants' facilities. Therefore, Triple AAA lacks standing to sue on behalf of these individuals.
28   *See Lujan*, 504 U.S. at 561; *see also Small v. General Nutrition Companies, Inc.*, 388 F. Supp. 2d 83,
     98 (E.D.N.Y. 2005) ("associational standing exists only insofar as organization members have
     standing, [and] associational standing may not be broader or more extensive than the standing of the
     organization's members.")

1     **B.     Class Action Allegations**

2     Defendants urge the Court to strike Plaintiffs' class allegations, claiming (1) it is unnecessary

3     (Motion at 19), and (2) Plaintiffs cannot satisfy the commonality, typicality, and numerosity

4     requirements of Rule 23(a). Defendants argue the proposed class would include "persons with a wide

5     range of disabilities," who are separated by distances of more than 900 miles. (*Id.* at 18-19.)

6     Defendants also argue that if Plaintiffs seek damages, class treatment would be inappropriate because

7     "members will have to individually prove" damages. (*Id.* at 19.) The Court declines to address these

8     arguments at this time. Plaintiffs may move for class certification in accordance with the Court's

9     briefing schedule which will be set by the Magistrate Judge at the Case Management Conference. *See*

10    Chambers Local Rules 4.B.(2).

11    **C.     Supplemental Jurisdiction**

12    Under 28 U.S.C. § 1367, where a district court has original jurisdiction over a claim, it also

13    has "supplemental jurisdiction over all other claims that are so related to claims in the action within

14    such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. The

15    Ninth Circuit mandates the exercise of supplemental jurisdiction unless it is prohibited by section

16    1367(b), or unless one of the exceptions in section 1367(c) applies. *Executive Software N. Am., Inc.*

17    *v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994). Under

18    section 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if: (1) the

19    claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the

20    claim or claims over which the district court has original jurisdiction; (3) the district court has

21    dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there

22    are other compelling reasons for declining jurisdiction.

23    After carefully considering the arguments set forth in the parties' briefing, the Court declines

24    to exercise supplemental jurisdiction over the alleged state law claims. The identical issue, involving

25    identical claims, was addressed at length by Judge Gonzalez in *Brick Oven*, 406 F. Supp. 2d 1120, in

26    which the court declined to exercise supplemental jurisdiction over the state law claims under §

27    1367(c)(1), (2) & (4). This Court finds the reasoning in *Brick Oven* persuasive. Accordingly, the

28    Court declines to exercise supplemental jurisdiction over the state law claims.

## IV.

### CONCLUSION

For these reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion to dismiss. The motion to dismiss is GRANTED with respect to: (1) Triple AAA's organizational standing, (2) Triple AAA's associational standing, as to the hearing and visually impaired and those who accompanied Triple AAA members to the facilities in question, and (3) the pendant state law claims. The remainder of the motion is DENIED. Accordingly, the only remaining Plaintiffs in this action are Carpenter and Allan in their individual capacities, and Triple AAA in its associational capacity, suing on behalf of Carpenter and Allan, and all of its other members who use wheelchairs for mobility.

Defendants shall answer the SAC within the time prescribed by the Federal Rules of Civil Procedure. The parties also shall appear for an ENE Conference with the Magistrate Judge within 30 days of this Order being stamped "filed," at which time all dates, including a trial date, shall be set.

Finally, Plaintiffs shall show cause why the seven Del Taco locations specified above should not be dismissed due to Plaintiffs' failure to comply with Fed. R. Civ. P. 4(m). Plaintiffs shall file a response to this order to show cause on or before <u>March 5, 2007</u>. The matter will be heard on <u>March 9, 2007</u>, at <u>10:30 a.m.</u> Appearances are not required.

**IT IS SO ORDERED.**

DATED: February 26, 2007

_____
HON. DANA M. SABRAW
United States District Judge

cc:    all parties
       Judge McCurine

- 12 -                                                                 06cv2199

**CERTIFICATE OF SERVICE**
(United States District Court)

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 610 Newport Center Drive, Suite 700, Newport Beach, CA 92660.

On January 30, 2008, I have served the foregoing document described as **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION FOR ORDER DECLINING SUPPLEMENTAL JURISDICTION** on the following person(s) in the manner(s) indicated below:

**SEE ATTACHED SERVICE LIST**

**[ X ]** (BY ELECTRONIC SERVICE) I am causing the document(s) to be served on the Filing User(s) through the Court's Electronic Filing System.

**[ ]** (BY MAIL) I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

**[ ]** (BY OVERNIGHT SERVICE) I am familiar with the practice of Call, Jensen & Ferrell for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by the overnight service provider the same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by the overnight service provider with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by the overnight service provider at Call, Jensen & Ferrell, Newport Beach, California, following ordinary business practices.

**[ ]** (BY FACSIMILE TRANSMISSION) On this date, at the time indicated on the transmittal sheet, I transmitted from a facsimile transmission machine, which telephone number is (949) 717-3100, the document described above and a copy of this declaration to the person, and at the facsimile transmission telephone numbers, set forth herein. The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the facsimile transmission machine upon which the said transmission was made immediately following the transmission.

**[ ]** (BY E-MAIL) I transmitted the foregoing document(s) by e-mail to the addressee(s) at the e-mail address(s) indicated.

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

**[ X ]**  (FEDERAL)  I declare that I am a member of the Bar and a registered Filing User for this District of the United States District Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Certificate is executed on January 30, 2008, at Newport Beach, California.

*s/Lisa A. Wegner*

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION

1

# SERVICE LIST

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David C. Wakefield, Esq.
Michelle L. Wakefield, Esq.
Pinnock & Wakefield, A.P.C.
3033 5th Avenue, Suite 410
San Diego, CA 92103
Tel:  (619) 858-3671
Fax: (619) 858-3646
TheodorePinnock@PinnockWakefieldLaw.com
DavidWakefield@PinnockWakefieldLaw.com
MichelleWakefield@PinnockWakefieldLaw.com

**Attorneys for**

**Plaintiff, Outerbridge Access
Association, Suing on Behalf of
Diane Cross and Diane Cross, An
Individual**

CALL, JENSEN &
FERRELL
A PROFESSIONAL
CORPORATION